1  Attorney Angela Swan, Esq., SBN 213793
2  THE LAW OFFICES OF ANGELA SWAN, APC
   21151 South Western Avenue, Suite 177
3  Torrance, California  90501
   Bus. (310)755-2515
4  Fax. (310)878-0349

5
   Attorney for Plaintiffs:  ERIC M. MURPHY and GLENDA C. MURPHY
6

7                    UNITED STATES DISTRICT COURT
8                    CENTRAL DISTRICT OF CALIFORNIA
9                    EASTERN DIVISION-SAN BERNARDINO

10
   ERIC M. MURPHY, an individual; and    )  CASE NO.:  EDCV19-00636JGB(SPx)
11 GLENDA C. MURPHY, an individual,       )  Riverside, Courtroom:  1
                                          )  Judge:   Honorable Jesus G Bernal
12                                        )
13             Plaintiffs,                )
                                          )
14                                        )
                                          )  **NOTICE OF EX PARTE APPLICATION AND**
15     vs.                                )  **EX PARTE APPLICATION**
                                          )  **FOR TEMPORARY RESTRAINING**
16                                        )  **ORDER, AND TEMPORARY AND**
   U.S. BANK NATIONAL                     )  **PERMANENT INJUNCTIVE RELIEF;**
17 ASSOCIATION, AS TRUSTEE FOR            )  **MEMORANDUM OF POINTS AND**
   MASTR ADJUSTABLE RATE                  )  **AUTHORITIES; DECLARATIONS**
18 MORTGAGES TRUST 2007-1,                )  **OF ERIC M. MURPHY AND GLENDA C.**
   MORTGAGE PASS-THROUGH                  )  **MURPHY IN SUPPORT THEREOF**
19 CERTIFICATES, SERIES 2007-1;           )
   FIDELITY NATIONAL TITLE                )
20 COMPANY; MEGA CAPITAL                  )
   FUNDING, INC.; POWER DEFAULT           )  **(Pursuant to Federal Rule of Civil**
21 SERVICES, INC.; OCWEN LOAN             )  **Procedure, rule 65(b)(1))**
22 SERVICING, LLC; MORTGAGE               )
   ELECTRONIC REGISTRATION                )
23 SYSTEMS, INC.; WESTERN                 )  [PROPOSED ORDER FILED CONCURRENTLY]
24 PROGRESSIVE, LLC; and  DOES 1          )
   THROUGH 10, INCLUSIVE,                 )
25                                        )
26             Defendants.                )
27 _____       )

28
                   APPLICATION FOR TRO AND INJUNCTIVE RELIEF
                                    1

**TO THE HONORABLE JUDGE OF SAID COURT:**

ERIC M. MURPHY and GLENDA C. MURPHY ("Plaintiffs"), hereby submit their VERIFIED EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND TEMPORARY AND PERMANENT INJUNCTIVE RELIEF, AND REQUEST FOR THE JUDGE'S APPROVAL OF THE NOTICE OF PENDENCY OF ACTION Pursuant to Federal Rules of Civil Procedure, Rule 65 (b)(1), Temporary Restraining Order, Issuing Without Notice; CCP, section 917.4, providing a stay and undertaking; and CCP, section 405.21, approval of Notice of Pendency of Action.

Good cause exists to grant this Ex Parte Application, given the very real potential for irreparable harm through the loss of Plaintiffs' Property Interest, the instant matter is most certainly appropriate for ex parte relief.

This application is based on this Ex Parte Application, the attached Memorandum of Points and Authorities, the accompanying Declarations of ERIC M. MURPHY and GLENDA C. MURPHY, all the other documents on file with the Court in this action, and such additional evidence and argument that may be properly received by the Court or may be presented at the time of hearing.

Respectfully submitted,

THE LAW OFFICES OF ANGELA SWAN, APC

DATED: April 18, 2019

BY: _____
ANGELA SWAN, ESQ.
Attorney for ERIC M. MURHPHY and
GLENDA C. MURPHY

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs are the legal owners of the "Property" commonly known as 9965 McKinley Street, Rancho Cucamonga, California 91730.  October 5, 1994, a Deed of Trust ("DOT") was executed, naming Long Beach Bank, FSB as the Lender and Trustee (conflict of interest); recorded October 17, 1994.  *True and correct copies of the Quitclaim Deed and Deed of Trust are attached hereto as Exhibits 1 and 2, and incorporated herein by reference.*

Plaintiffs allege that the Defendants are threatening to unlawfully sale, assign and/or transfer Plaintiffs' ownership and security interest under a DOT.

Plaintiffs allege that they paid their mortgage on time during the entire existence of their loans.  However, the following demonstrates the contrary and that Defendants have committed identity theft and extortion against Plaintiffs, recording fraudulent Real Property documents in an effort to unlawfully take Plaintiffs' Property.

January 2, 1996, a fraudulent DOT was executed purportedly securing a loan of $20,000.00 (**Plaintiffs state they never received**) naming Legend Financial Group, Inc. as the Beneficiary and Lender, and First American Title Company as Trustee; recorded January 18, 1996.

June 23, 1997, a fraudulent DOT was executed purportedly securing a loan of $35,000.00 (**Plaintiffs state they never received this loan**), naming Harbor View

Mortgage as Beneficiary, and American Title Company, as Trustee; recorded, July 10, 1997. **Plaintiffs allege that they were never aware of this transaction**.

July 31, 1997, a fraudulent Corporation Assignment of Deed of Trust was mailed to Plaintiffs and executed by Harbor View Mortgage, assigning all beneficiary interest to Preferred Credit Corp., under the fraudulent DOT dated June 23, 1997, naming Trustee as American Title Company.  The fraudulent Assignment signed by "a known illegal robosigner."  This fraudulent Corporation Assignment of Deed of Trust was never recorded. **Long Beach Bank, FSB only had authority to assign the DOT**. *A True and correct copy of the Corporation Assignment of Deed of Trust is attached hereto as Exhibit 3 and incorporated herein by reference.*

November 23, 1999, a DOT was executed purportedly securing a loan of $159,152.00, naming Chase Manhattan Mortgage Corporation (**unqualified to do business in California**) as the Beneficiary under the laws of the State of New Jersey, and First Southwestern Title Company of California as Trustee; recorded December 3, 1999.

December 3, 1999, a DOT was executed by Household Finance Corporation as Lender, and Housekey Finance Corporation as Beneficiary and Trustee (*conflict of interest*), securing a loan of $5,500.00; recorded December 9, 1999.

March 3, 2000, an invalid Substitution of Trustee ("SOT") was executed by Preferred Credit Corporation, **an unauthorized entity**, under a fraudulent DOT executed June 23, 1997, naming American Title Company, as Trustee, recorded July 24, 1997, naming Defendant U.S. BANK, as Substituted Trustee; recorded March 14, 2000.  **A**

**DOT was never recorded July 24, 1997, as the SOT states**. *A True and correct copy of the Substitution of Trustee is attached hereto as Exhibit 4 and incorporated herein by reference.*

Plaintiffs' Property was never legally assigned to Preferred Credit Corporation under a DOT, purportedly executed June 23, 1997, and recorded July 10, 1997.  In addition, the fraudulent **Corporation Assignment of Deed of Trust was never recorded**.

June 23, 2000, a fraudulent DOT was executed purportedly securing a loan of $27,000.00 (**Plaintiffs state they never received**), naming Household Finance Corporation of California as Beneficiary and Housekey Finance Corporation as Trustee; recorded June 30, 2000.

March 14, 2002, a fraudulent DOT was executed securing a loan of $197,500.00, falsely naming Secured Bankers Mortgage Company (Partnership under the laws of California) as Lender, T.D. Service Co., a California Corporation as Trustee, and Defendant MERS, acting solely as a nominee for Lender and Lender's successors and assigns, and Beneficiary; recorded March 20, 2002.

Secured Bankers Mortgage Company was **never a Partnership under the laws of California**.  Secured Bankers Mortgage Company was never qualified to do business in California.

September 5, 2003, a fraudulent Grant Deed was executed and recorded September 15, 2003.  **Plaintiffs' Property was already granted** via Quitclaim Deed

executed October 5, 1994 and recorded October 17, 1994. *A True and correct copy of the*

*Grant Deed is attached hereto as Exhibit 5 and incorporated herein by reference.*

September 5, 2003, a DOT was executed by Fremont Investment and Loan as

Lender, MERS as Beneficiary, and Fremont General Credit Corporation as Trustee,

securing a loan for the amount of $175,000.00; recorded September 15, 2003.

January 7, 2004, a SOT and Full Reconveyance was executed by Secured Bankers

Mortgage Company, **an unauthorized entity**, named as the present Beneficiary, under

the DOT recorded March 20, 2002, substitutes himself as Trustee (*conflict of interest*);

this document was recorded January 13, 2004.

October 10, 2005, a fraudulent DOT was executed securing a loan of $275,000.00,

naming Defendant MEGA, a California Corporation as Lender, Alliance Title Company

as Trustee, and Defendant MERS, acting solely as a nominee for Lender and Lender's

successors and assigns, and Beneficiary; recorded October 19, 2005. Plaintiffs

discovered that half the pages in the loan application were forged, not the signatures of

Plaintiff GLENDA C. MURPHY, who had "Power of Attorney" to sign on behalf of

Plaintiff ERIC M. MURPHY.

October 20, 2005, Plaintiffs' Credit Report reflects a zero balance for a loan

amount of $229,500.00, provided by Fremont Investment and Loan. *A True and correct*

*copy of the Plaintiffs' Credit Report is attached hereto as Exhibit 6 and incorporated*

*herein by reference.*

APPLICATION FOR TRO AND INJUNCTIVE RELIEF

6

October 21, 2005, an invalid SOT was executed by MERS for Fremont Investment & Loan as Beneficiary, naming Fremont General Credit Corp. as Trustee, under the DOT executed September 5, 2003 and recorded September 15, 2003.  TICOR Title Insurance Company, as Substitute Trustee; recorded November 22, 2005.  *A True and correct copy of the Substitution of Trustee is attached hereto as Exhibit 7 and incorporated herein by reference.*

September 29, 2006, a fraudulent Promissory Note and DOT was executed purportedly securing a loan for $370,000.00, naming American Brokers Conduit as Lender; recorded October 10, 2006.  **American Brokers Conduit did not legally exist** as an entity in 2006 and has never been legally incorporated in any state.

October 2, 2006, a fraudulent Grant Deed was executed; recorded October 10, 2006.  **Plaintiffs' Property was already granted** via Quitclaim Deed executed October 5, 1994 and recorded October 17, 1994.  *A True and correct copy of the Grant Deed is attached hereto as Exhibit 8 and incorporated herein by reference.*

About August 2, 2007, **American Home Mortgage Corp, dba American Brokers Conduit** was issued a Temporary Order to Cease and Desist.  The California Department of Business Oversight found that **American Brokers Conduit** engaged in a pattern of forging real estate documents and selling interests therein to investors and ordered them to cease and desist from engaging in such conduct.

May 25, 2010, a fraudulent Assignment of Deed of Trust was executed by MERS, an unauthorized entity, as nominee for **American Brokers Conduit**, assigning the

beneficial interest to Defendant U.S. BANK under the fraudulent DOT dated September 29, 2006 and recorded October 10, 2006, naming LSI Division as Trustee; recorded July 7, 2010. *A True and correct copy of the Assignment of Deed of Trust is attached hereto as Exhibit 9 and incorporated herein by reference.*

The Assignment is VOID, because **American Brokers Conduit** did not exist, and therefore could not appoint MERS as its nominee, and therefore MERS had nothing to assign.

November 26, 2010, a fraudulent Notice of Default ("NOD") was executed by **an unauthorized entity**, Default Resolution Network Agent for the Beneficiary By: ServiceLink, its Agent Through ServiceLink as Agent, through SPL Inc., as Authorized Agent under the fraudulent DOT dated September 29, 2006 and recorded October 10, 2006; recorded November 29, 2010. *A True and correct copy of the Notice of Default is attached hereto as Exhibit 10 and incorporated herein by reference.*

Default Resolution Network, LLC operated as a subsidiary of Fidelity National Financial, Inc. that surrendered November 17, 1987 and November 30, 2006 doing business in California, and Default Resolution Network, LLC **was never qualified to do business in California as a Limited Liability Company**.

December 20, 2010, an invalid SOT was executed by Defendant U.S. BANK by American Home Mortgage Servicing Inc., as Attorney in Fact, under the fraudulent DOT dated September 29, 2006 and recorded October 10, 2006; Substitute Trustee is Defendant PDS is C/O Defendant FIDELITY; recorded April 29, 2011. *A True and*

*correct copy of the Substitution Trustee is attached hereto as Exhibit 11 and incorporated herein by reference.*

April 16, 2011, a fraudulent Notice of Trustee's Sale was executed by Defendant PDS under the fraudulent DOT dated September 29, 2006 and recorded October 10, 2006; Sale Date:  May 19, 2011; recorded April 29, 2011.  *A True and correct copy of the Notice of Trustee's Sale is attached hereto as Exhibit 12 and incorporated herein by reference.*

June 17, 2015, Plaintiffs' Consumer Credit Report reflects that there is a zero balance for a loan of $370,000.00, date of Origination:  September 29, 2006; **American Brokers Conduit** as Lender.

January 8, 2018, an invalid SOT was recorded under a fraudulent DOT dated September 29, 2006 and recorded October 10, 2006, naming LSI Division as Trustee, and **American Brokers Conduit** as Lender, and MERS as Beneficiary; Defendant WESTERN PROGRESSIVE as Substitute Trustee.  *A True and correct copy of the Substitution of Trustee is attached hereto as Exhibit 13 and incorporated herein by reference.*

January 12, 2018 a fraudulent NOD was executed by Defendant WESTERN PROGRESSIVE, **an unauthorized entity**, as Trustee for Beneficiary, under a fraudulent DOT dated September 29, 2006 and recorded October 10, 2006; recorded January 17, 2018.  *A True and correct copy of the Notice of Default is attached hereto as Exhibit 14 and incorporated herein by reference.*

April 30, 2018, a Notice of Trustee's Sale was executed by Defendant WESTERN PROGRESSIVE, as Trustee for Beneficiary, under a fraudulent DOT dated September 29, 2006 and recorded October 10, 2006; Sale Date: May 31, 2018; recorded May 1, 2018. *A True and correct copy of the Notice of Trustee's Sale is attached hereto as Exhibit 15 and incorporated herein by reference.*

A non-judicial foreclosure may not be initiated by anyone other than the holder of a beneficial interest under the DOT.  Civil Code section 2924(a)(6).

Under the provisions of Civil Code section 2924.18, a mortgage servicer, trustee, mortgagee, beneficiary or authorized agent:

> "shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification."

December 3, 2018, a fraudulent NOD was executed by **an unauthorized entity**, Defendant WESTERN PROGRESSIVE as Trustee for Beneficiary, under a fraudulent DOT dated September 29, 2006 and recorded October 10, 2006; recorded December 5, 2018. *A True and correct copy of the Notice of Default is attached hereto as Exhibit 16 and incorporated herein by reference.*

APPLICATION FOR TRO AND INJUNCTIVE RELIEF

March 6, 2019, Defendant WESTERN PROGRESSIVE, an unauthorized entity, executed a **Notice of Trustee's Sale**; **Sale Date:  April 23, 2019.**  *A True and correct copy of the Notice of Trustee's Sale is attached hereto as Exhibit 17 and incorporated herein by reference.*

More than half the aforementioned entities' status with the California Secretary of State are either suspended ten (10) years or more due to Franchise Tax Board violations or they have surrendered; demonstrating that their only purpose of operation was to defraud the public.

As the aforementioned demonstrates, many of the entities collectively operated a Mortgage Scheme for "Economic Gain", with the intent to defaud Plaintiffs' interest in their Property, causing fraudulent DOTS to be recorded in the Official Recorders in the office of the Recorder of San Bernardino County, California, claiming to secure loans that Plaintiffs never received.

## II.   ARGUMENT

### A.   Ex Parte Application for Temporary Restraining Order and Injunctive Relief

Pursuant to Federal Rules of Civil Procedure, Rule 65 (b)(1) the court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in a verified complaint clearly shows that immediate

and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition…

### B. Standard for Ex Parte TRO

Inasmuch as a temporary restraining order may be obtained without notice to the adverse party, it is most often sought where immediate relief is necessary to protect the Plaintiffs.  In order to obtain immediate relief without notice, however, the application for a temporary restraining order must clearly demonstrate from specific facts that the Plaintiffs will suffer "immediate and irreparable injury, loss, or damage" before notice can be served on the adverse party and a hearing on the application can be held. A TRO is appropriate in cases where prior notice to the adverse party may make further prosecution of the action futile. *Vuitton et Fils S.A.*, 606 F.2d 1, 5 (2d Cir. 1979)

### C. Standard for Preliminary Injunction

To obtain a temporary injunction, equity requires the Plaintiff to plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim if the injunction is not granted.

Pursuant to Federal Rules of Civil Procedure 65, (b)(3): …the motion for a preliminary injunction must be set for hearing at the earliest possible time, taking precedence over all other matters except hearings on older matters of the same character. At the hearing, the party who obtained the order must proceeed with the motion; if the party does not, the court must dissolve the order.

Plaintiffs will be irreparably harmed if a Preliminary Injunction is not issued because their Property is unique and the loss of it by any means constitutes irreparable damage.  It is well-established that the loss of an interest in real property constitutes irreparable injury. *Park Village Apartment Tenant's Association v. Mortimer Howard Trust*, 636 F. 3d 1150, 1159 (9th Cir. 2011) cert. denied, 132 S. Ct. 756 (U.S. 2011). The law conclusively establishes in Plaintiff's favor, a presumption that … real estate cannot be adequately relieved by monetary damages. This presumption is "conclusive" when it involved "single-family dwellings." California Civil Code, Section 3387.

A temporary injunction differs from a temporary restraining order, in terms of the duration of the restraint granted by a trial court's interlocutory order. Unlike a temporary restraining order, which is limited in duration, a temporary injunction is effective for as long as the Plaintiff's cause of action remains pending and until final judgment has been entered on the merits of the Plaintiff's cause of action.

Temporary injunctions, unlike temporary restraining orders, cannot be founded simply upon sworn pleadings or affidavits, but require the presentation of evidence. The standard for Temporary Injunction will be satisfied after hearing and presentation of the evidence to the Court.

**D. <u>Immediate and Irreparable Injury, Loss, or Damage</u>**

   **<u>will Result if the TRO is not Granted</u>**

The sale of Plaintiffs' Property and/or any further transfer of ownership or encumbrance must be enjoined because the evidence elicited herein by this verified

application is sufficient to show immediate and irreparable injury, loss, or damage to Plaintiffs. Plaintiffs' evidence has shown that Defendants U.S BANK, MERS, or PROGRESSIVE WESTERN have no capacity to transfer title from Plaintiffs.

The wrongful conduct of the above specified Defendants, unless restrained and enjoined by an Order of the Court, will continue to cause great and irreparable harm to Plaintiffs. Plaintiffs will not have the beneficial use and enjoyment of their home that they own and will lose their Property. Plaintiffs have no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable damage to Plaintiffs. Plaintiffs have suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it will be impossible for Plaintiffs to determine the precise amount of damage that they will suffer.

Plaintiffs have alleged causes of actions against Defendants, as indicated in their Verified Civil Complaint for Damages, filed concurrently, demonstrating a probable right to relief and likelihood of success on the merits that Plaintiffs will suffer imminent and irreparable harm without Court intervention.

Accordingly, Plaintiffs request that the Court immediately and temporarily restrain Defendants and all others acting in concert with them from:

     a)  Physically invading or entering onto the real property of Plaintiffs, located at 9965 McKinley Street, Rancho Cucamonga, California  91730, bearing Assessor Parcel Number 0209-312-59 ("Property");

APPLICATION FOR TRO AND INJUNCTIVE RELIEF
14

b) Physically interacting, confronting, touching, or approaching Plaintiffs, guests, or other individuals on the grounds of property or within fifty (50) feet of the property;

At this time, Plaintiffs respectfully requests the following relief:

a) A Temporary Restraining Order be issued, restraining Defendants and any and all others acting in concert with them from engaging in the sale of the Property; and

b) A Temporary Injunction be issued, after notice to Defendants and an evidentiary hearing, restraining Defendants from directly or indirectly engaging in any of the actions discussed above during the pendency of this case.

## E. Permanent Injunction Relief

"As a general rule, a permanent injunction will be granted when liability has been established and there is a threat of continuing violations." *MAI Sys. Corp. c. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993).

If Plaintiffs can demonstrate that they would be greatly harmed by the Court's failure to grant an injunction, then the determination of success on the merits bears much less weight in the determination to grant an injunction. *Robbins v. Superior Court*, 38 Cal. 3d 199 (1985)

**F.  <u>Tender Is Not Required</u>**

Tender has been excused when, among other circumstances, the plaintiff alleges the foreclosure deed is facially void, as arguably is the case when the entity that initiated the sale lacked authority to do so.  *Lester v. J.P. Morgan Chase Bank*, (N.D.Cal. 2013) 926 F. Supp. 2d 1081, 1093; *Barrionuevo v. Chase Bank, N.A.*, supra, 885 F. Supp. 2d 964, 969–970.

CCP § 917.4. The California Supreme Court has interpreted Section 917.4 to provide that a defendant may stay the enforcement of an order directing the sale, conveyance or delivery of possession of real property "by submitting an undertaking in an amount fixed by the trial court to insure against waste." *Arrow Sand & Gravel, Inc. v. Superior Court*, 38 Cal.3d 884, 891 (1985); *Selma Auto Mall II v. Appellate Dept.*, 44 Cal.App.4th 1672, 1681 (1996)

Section 917.4 leaves the setting of the amount of the undertaking necessary to stay enforcement within the discretion of the Trial Court. There is nothing in the statute, nor as far as Plaintiffs can tell, in the case law construing the statute to prohibit the trial court from setting the undertaking at a nominal amount of $1.00 where, as here, there is no danger of waste and where the imposition of a larger undertaking would place an enormous burden on Plaintiffs' already maxed out resources.

Plaintiffs have no incentive or intention to commit any waste at the Property or allow any waste to be committed.

During the pendency of Plaintiffs' instant action, filed concurrently, the Court should set the value of the required undertaking at the nominal amount of $1, since there is no danger of any waste upon the Property.

In fact, California precedent supports consideration of hardship to the party required to post the undertaking where, as here, Defendants are selling the Property before Plaintiffs get the opportunity to raise affirmative defenses proving their legal right of title, depriving Plaintiffs of a complete and adequate remedy. See *Woods-Drury, Inc. v. Superior Court*, 18 Cal.App.2d 340, 349 (1936)

**G.** **The Notice of Pendency of Action**

    **Should be Approved by the Court**

CCP section 405.21 provides:

> An attorney of record in an action may sign a notice of
> pendency of action. Alternatively, a judge of the court
> in which an action that includes a real property claim is
> pending may, upon request of a party thereto, approve a
> notice of pendency of action. A notice of pendency of
> action shall not be recorded unless (a) it has been signed
> by the attorney of record, (b) it is signed by a party
> acting in propria persona and approved by a judge as
> provided in this section, or (c) the action is subject to

Section 405.6.

CCP § 405.21, pursuant to subdivision (b) of Section 405.21, Plaintiffs are required to obtain the Court's approval upon the instant Notice of Pendency of Action (fka, "Lis Pendens") since they are not represented by an attorney in this action and are instead representing themselves. The Legislature makes clear in Comment 2 to CCP section 405.21 that "it is the duty of the court pursuant to this section to confirm that an action containing a real property claim, as defined by CCP 405.4, is pending, and to approve a lis pendens is proper in form if such a claim is pending." CCP § 405.21 (Official Legislative Comments). A Notice of Pendency of Action is only effective as long as the action is pending.

Here, even if the Ex Parte Application is not granted, it is not only proper, but mandatory, that this Court sign the Notice of Pendency of Action filed concurrently herewith, as all of the other requirements of CCP section 405.20 (i.e., name of the party; legal and common description of the Property; pending action affecting real property) have been satisfied.

Finally, it is imperative that the Court approves the Notice of Pendency of Action today, **Defendants currently have a sale transaction pending**. The Property will be sold before Plaintiffs have the ability to raise affirmative defenses proving their legal right of title. See *Arrow Sand & Gravel, Inc.*, supra, 38 Cal.3d at 891 ("As a legal matter, recording a notice of lis pendens is not an impediment to the sale of real property. It

APPLICATION FOR TRO AND INJUNCTIVE RELIEF
18

simply provides constructive notice of pertinent pending legal actions and protects the priority of the litigants' interest.").

### III.   PRAYER

Plaintiffs' prayer is that this Court issues an EX-PARTE TEMPORARY RESTRAINING ORDER and TEMPORARY INJUNCTION TO RESTRAIN, until a hearing on the order to show cause why Defendants and their employees, agents, and persons acting with them should not be enjoined from Trespassing, Invasion of Privacy, Libel, and transferring ownership of or further encumbering Plaintiffs' Property.

### IV.   CONCLUSION

Relief sought by this Application is necessary, because Plaintiffs will suffer irreparable harm; they are the legal owners and have an equitable interest in the Property that is now pending for sale.

Plaintiffs respectfully request that the Court GRANT the Ex Parte Application.

Respectfully submitted,
THE LAW OFFICES OF ANGELA SWAN,
APC

DATED: April 18, 2019                    BY: _____
                                          ANGELA SWAN, ESQ.
                                          Attorney for ERIC M. MURHPHY and
                                          GLENDA C. MURPHY

APPLICATION FOR TRO AND INJUNCTIVE RELIEF
19