Angela Swan, Esq., SBN 213793
THE LAW OFFICES OF ANGELA SWAN, APC
21151 South Western Avenue, Suite 177
Torrance, CA  90501
Bus. (310)755-2515
Fax. (310)878-0349
Email: aswan@angelaswanlaw.com

Attorney for ERIC M. MURPHY and GLENDA C. MURPHY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## EASTERN DIVISION-SAN BERNARDINO

| | |
|---|---|
| ERIC M. MURPHY, an individual; and GLENDA C. MURPHY, an individual, | CASE NO.:  EDCV19-00636JGB(SPx)<br>Courtroom: 1<br>Judge:  Hon. Jesus G. Bernal |
| Plaintiffs, | |
| vs. | **EXHIBITS IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER, AND TEMPORARY AND PERMANENT INJUNCTIVE RELIEF** |
| U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR MASTR ADJUSTABLE RATE MORTGAGES TRUST 2007-1, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-1; FIDELITY NATIONAL TITLE COMPANY; MEGA CAPITAL FUNDING, INC.; POWER DEFAULT SERVICES, INC.; OCWEN LOAN SERVICING, LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; WESTERN PROGRESSIVE, LLC; and  DOES 1 THROUGH 10, INCLUSIVE, | **[VOLUME 1 OF 2]** |
| Defendants. | |

EXHIBIT 1

RECORDING REQUESTED BY

|  | FEE | 6 |  |
|---|---|---|---|
|  | 2 MSYS | CHRG |  |
|  | 3 PCOR | 7 GIMS |  |
|  | 4 LNNT | 8 NO FEE |  |
|  | 5 SVY | 9 ST FEE |  |
|  | 5 DTT |  | U |

NAME

AND WHEN RECORDED MAIL TO:

Eric and Glenda Murphy

STREET ADDRESS   9965 Mckinley street

CITY STATE ZIP   Rancho Cucamonga CA. 91730

DOCUMENT #

94423839

RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY ERROL J MACKZUM RECORDER

Oct/17/1994 3:30:00:PM

# QUITCLAIM DEED

ASSESSOR'S PARCEL NO: 0209-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

TITLE ORDER NO: 4935492

ESCROW NO: Ø

The undersigned Grantor(s) declare(s) that the DOCUMENTARY TRANSFER TAX IS: $ 00.00 _____ County, $ 00.00 City computed on the full value of the interest of property conveyed. or
_____ computed on the full value less the value of liens or encumbrances remaining thereon at the time of sale OR transfer is exempt from tax for the following reason:

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged. Rodgner Thomas and Barbara Thomas, Husband and wife and Carol A. Carter, an unmarried woman, all as joint tenants hereby REMISES, RELEASES and QUITCLAIMS to:

Eric M. Murphy and Glenda C. Murphy, husband and wife as joint tenants

all right, title, and interest in and to that real property situated in the City of Rancho Cucamonga
.County of San Bernardino (name of city or unincorporated area)
.State of California, described as:

LOT 18 OF TRACT NO. 9035, IN THE CITY OF RANCHO CUCAMONGA, AS PER MAP RECORDED IN BOOK 129 PAGES 87 THROUGH 89 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

Dated 10-5-94

STATE OF CALIFORNIA
COUNTY OF SAN BERNARDINO ) ss
On OCT. 10, 1994 before me MANOLITO L. SUBIDA

personally appeared RODGNER THOMAS, BARBARA THOMAS AND CAROL A. CARTER,

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

Rodgner Thomas

Barbara A. Thomas

Carol A Carter

MANOLITO L SUBIDA
Comm. # 989884
NOTARY PUBLIC - CALIFORNIA
San Bernardino County
My Comm. Expires Mar. 31, 1997

(This area for official notary seal)

MAIL TAX STATEMENTS TO:   MAIL TAX STATEMENTS AS DIRECTED ABOVE

| NAME | ADDRESS | CITY, STATE & ZIP |
|---|---|---|

THIS FORM FURNISHED COURTESY OF ORANGE COAST TITLE COMPANIES

# EXHIBIT 2

RECORDING REQUESTED BY:
FIDELITY NATIONAL TITLE

When recorded, mail to:

LONG BEACH BANK, F.S.B.
972 TOWN AND COUNTRY ROAD
ORANGE, CA 92668

LOAN NO. 0102312-606

| 1 FEE | 13 | 6 | 06 |
| | | CHRG | |
| 2 MSVS | 8 | 7 GIMS | |
| 3 PCOR | | 8 NO FEE | |
| 4 LNNT | | 9 ST FEE | 7 |
| 5 SVY | | | |
| 5 | | | U |
| | DTT | | |

DOCUMENT #

**94423838**
RECORDED IN THE
OFFICIAL RECORDS OF
SAN BERNARDINO COUNTY
ERROL J MACKZUM
RECORDER
Oct/17/1994
3:30:00:PM
*

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on      October        5 ,  1994           . The trustor is
ERIC M MURPHY and GLENDA C MURPHY, HUSBAND AND WIFE AS JOINT TENANTS

("Borrower). The trustee is      LONG BEACH BANK, F.S.B.

("Trustee"). The beneficiary is      LONG BEACH BANK, F.S.B.

which is organized and existing under the laws of  the United States of America                                    , and whose
address is      972 TOWN AND COUNTRY ROAD ORANGE, CA 92668

("Lender"). Borrower owes Lender the principal sum of
One Hundred Twenty Thousand and no/100----------------------------------------------------------------
                                                                Dollars (U.S. $     120,000.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on  November    1 ,  2024          .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to
protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of
sale, the following described property located in      SAN BERNARDINO                           County, California:

LOT 18 OF TRACT NO. 9035 IN THE CITY OF RANCHO CUCAMONGA, AS PER MAP RECORDED IN
BOOK 129 PAGES 87 THROUGH 89 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY
RECORDER OF SAID COUNTY.

which has the address of  9965 MCKINLEY STREET                    RANCHO CUCAMONGA                    [Street, City],
California      91730                                        [Zip Code]  ("Property Address");
CALIFORNIA-Single Family-FNMA/FHLMC UNIFORM
INSTRUMENT   Form 3005 9/90
-6H(CA) (9403).01  Page 1 of 8       Amended 12/93
VMP MORTGAGE FORMS - (800)521-7291   Initials: _____
CALDOT1 (7/26/94)
                                              6CM

94-423838

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

-6H(CA) (9403).01
CALDOT2 (7/26/94)

Loan No. 0102312-606
Page 2 of 6

Form 3005   9/90
Initials: _EMM_
_GCM_

94-423838

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve

-6H(CA) (9403).01
CALDOT3 (7/25/94)

Loan No. 0102312-606
Page 3 of 6

Form 3005   9/90
Initials: CMM
GCM

94-423838

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

@QVMD -6H(CA) (9403).01
CALDOTS (7/26/84)

Loan No. 0102312-606
Page 4 of 6

Form 3005   9/90,
Initials: EMM
GCM

94-423838

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the time required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made

-6H(CA) (9403).01
CALDOTS (7/26/94)

Loan No. 0102312-60E
Page 5 of 6

Form 3005 9/90
Initials: _____

94-423838

therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under applicable law.

23. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

24. **Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address which is the Property Address.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

26. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] V.A. Rider | [ ] Other(s) [specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____

_____      _Eric M. Murphy_____ (Seal)
ERIC M MURPHY                                    -Borrower

_____      _Glenda C Murphy_____ (Seal)
GLENDA C MURPHY                              -Borrower

_____ (Seal)
                                                           -Borrower

State of California
County of   ORANGE                                } ss.
                                                                        (Seal)
                                                                     -Borrower

On   10-5-94                          before me,      C. S. KNOX

                                                                              personally appeared

ERIC M. MURPHY & GLENDA C. MURPHY

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

C. S. KNOX
Comm. # 1014961
NOTARY PUBLIC - CALIFORNIA
Orange County
My Comm. Expires Jan. 20, 1998

_____
                                                           (Seal)

®-6H(CA) (9403).01                                     Loan No. 0102312-606
CALDOTG (7/24/94)                                       Page 6 of 8

Form 3005   9/90

Loan No. 0102312-606

**94-423838**

# ADJUSTABLE RATE RIDER
(LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this **5th** day of **October** , **1994** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to:

**LONG BEACH BANK, F.S.B.**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**9965 MCKINLEY STREET
RANCHO CUCAMONGA, CA  91730**
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **6.990** %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates
The interest rate I will pay may change on the first day of **May** , **1995** , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal.* The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding **Three and One Half** percentage point(s) ( **3.500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX - Single Family
Except (FL)

1956009 (9409)

Page 1 of 2

ELECTRONIC LASER FORMS, INC. - (800)327-0545

Initials:

Loan No. 0102312-606

94-423838

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 8.490 % or less than 6.990 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One and One Half percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 13.990 % or less than 6.990 %.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
ERIC M MURPHY                -Borrower

_____ (Seal)
GLENDA C MURPHY              -Borrower

_____ (Seal)
                            -Borrower

_____ (Seal)
                            -Borrower

-1956009 (9409)                    Page 2 of 2

# EXHIBIT 3

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:
Harbor View Mortgage
4063 Birch Street, Suite 200
Newport Beach, CA  92660

Recorded in Official Records, County of
San Bernardino, Errol J. Mackzum, Recorder
9.00
Doc No. 19970432805
2:38pm 11/25/97

205 20111645 02 15

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 0 |
|---|---|---|---|---|---|---|---|---|---|
| PG | FEE | APF | GIMS | PH CPY | CRT | CPY | ADD | PEN | PCOR |
| 1 | 7 | | | | | | | | |

| | | | | 5 | | | | 2 | 6 | | S |
|---|---|---|---|---|---|---|---|---|---|---|---|
| MOR ST | LH | SUV | CIT-CG | TRANS TAX | | DA | CHRG | | | EXAM |

## CORPORATION ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns and transfers to
PREFERRED CREDIT CORP., 4742 N. 24TH ST, #165, PHOENIX, AZ 85016
all beneficial interest under that certain Deed of Trust dated  June 23, 1997        executed by
Eric M. Murphy and Glenda C. Murphy, husband and wife as joint tenants

Trustor, to American Title Company
Trustee, and recorded as Instrument No. 97-243077, on 1/24/97, In Book
Page _____ of Official Records in the Office of the County Recorder of San Bernardino
County, CA _____ , describing land in said county as:
Lot 18 of Tract 9835, in the City of Rancho Cucamonga, County of San Bernardino, State of California, as per map
recorded in Book 129 Pages 87 through 89, inclusive of Maps, in the office of the County Recorder of said County.
APN: 0209-312-59-0-000

Together with the note or notes therein described or referred to, the money due and to become due thereon with interest, and
all rights accrued or to accrue under said Deed of Trust.

Date _____ July 31, 1997 _____

                                        Harbor View Mortgage
                                  by _____ President
                                        John Kordich
                                  by _____ Vice President

## ACKNOWLEDGEMENT

STATE OF   California
COUNTY OF  Orange                } S.S.

CAPACITY CLAIMED BY SIGNER
☐ INDIVIDUAL(S) SIGNING FOR ONESELF/THEMSELVES
☐ CORPORATE OFFICER(S)
☐ PARTNER(S)
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ OTHER: _____

On _____ July 31, 1997 _____ before me, the undersigned, a Notary Public in and for said County and State, personally appeared
John Kordich

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is(are) subscribed to the within
instrument and acknowledged that he/she/they executed the same in his/her/their authorized capacit(ies), and that by his/her/their signature(s) on the
instrument the person(s), or entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____ Notary Seal:

ERIC J. PETERSEN
Comm. # 1044319
NOTARY PUBLIC  CALIFORNIA
Orange County
My Comm. Expires Nov. 6, 1998

Aspr01 07/94

Loan No. 0102312-606

**94-423838**

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 8.490 % or less than 6.990 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than One and One Half percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 13.990 % or less than 6.990 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Eric M. Murphy_ (Seal)
ERIC M MURPHY          -Borrower

_Glenda C Murphy_ (Seal)
GLENDA C MURPHY          -Borrower

_____ (Seal)
                    -Borrower

_____ (Seal)
                    -Borrower

-1956009 (9409)

Page 2 of 2

EXHIBIT 4

Recording Requested By:
KT
U.S. Bank-Collateral Processing
PO Box 2687
Fargo, ND 58108-2687

When Recorded Mail To:
U.S. Recordings
222 E. Little Canada Rd.  Suite 125
St. Paul, MN  55117

## SUBSTITUTION OF TRUSTEE

WHEREAS,  AMERICAN TITLE COMPANY
is the present Trustee(s) of record under that certain Deed of Trust executed on the
23RD  day of  JUNE 1997  by  ERIC M MURPHY AND GLENDA C MURPHY
as Trustor to  AMERICAN TITLE COMPANY
as Trustee(s), recorded on the  24TH  day of  JULY 1997  as Instrument No  97-243277
in Book/Reel  at Page  of Official Records in the Office of the County Recorder
of the County of  SAN BERNARDINO  in the State of  California
AND WHEREAS, the undersigned,  PREFERRED CREDIT CORPORATION
is/are the present holder(s) of the beneficial interest under said Deed of Trust, and do/does hereby appoint
U.S. Bank Trust Company, National Association  as Trustee(s) in place and stead of said
AMERICAN TITLE COMPANY  under said Deed of Trust;

NOW THEREFORE, upon recordation of this document, the undersigned do/does hereby discharge the present
record  Trustee(s) and appoint U.S. Bank Trust Company, National Association
as the new Trustee(s) who shall succeed to all the powers, duties, authority and title of the former Trustee(s).

DATED this  3RD  day of  MARCH 2000

_Lynn Bluege-Rust_
Lynn Bluege-Rust
Beneficiary- Vice President
Preferred Credit Corporation

State of  North Dakota  )
)ss
County of  Cass  )

47359 1*5

On this  3RD  day of  MARCH 2000  before me, the undersigned, a Notary Public in and for the
State of North Dakota  duly commissioned and sworn, personally appeared  Lynn Bluege-Rust
to me known to be the  Vice President  of the corporation that executed the foregoing instrument,
and acknowledged the said instrument to be the free and voluntary act and deed of said corporation for the uses and
purposes there-in mentioned, and on oath states, authorized to execute the said instrument, and that the seal
affixed is the corporate seal of said corporation.

WITNESS my hand and official seal affixed the day and year above written.

BY:  _Karen M Kessler_
Commission Expires:

Loan #:  66200150250100001
Date:  03/03/00

Notary Seal

KAREN M. KESSLER
Notary Public
State of North Dakota
My Commission Expires April 12, 2005

EXHIBIT 5

Branch :OFF

**TICOR TITLE**
SAN BERNARDINO

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:
ERIC M. MURPHY
GLENDA C. MURPHY
9965 MCKINLEY STREET
RANCHO CUCAMONGA, CA 91730

Recorded in Official Records, County of San Bernardino        9/15/2003
8:00 AM
FV



**LARRY WALKER**
Auditor/Controller – Recorder

619 American Title

Doc#: 2003-0691899      Titles: 1     Pages: 1

| | |
|---|---|
| Fees | 6.00 |
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $6.00 |

A.P.N.: 0209-312-59          Order No.: 4280387

Space Above This Line for Recorder's Use Only

Escrow No.: 03-4214-JJ

### GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s) THAT DOCUMENTARY TRANSFER TAX IS: COUNTY $____
[ ]   computed on full value of property conveyed, or
[ ]   computed on full value less value of liens or encumbrances remaining at time of sale,
[ ]   unincorporated area;  [ ] City of _RANCHO CUCAMONGA_ , and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
ERIC M. MURPHY AND GLENDA R. MURPHY(WHO ACQUIRED TITLE AS GLENDA C. MURPHY), AS JOINT
TENANTS

hereby GRANT(s) to  ERIC M. MURPHY and GLENDA R. MURPHY, Husband and Wife as Joint Tenants

the following described property in the City of RANCHO CUCAMONGA, County of San Bernardino State of California;
LOT 18 OF TRACT NO. 9035, IN THE CITY OF RANCHO CUCAMONGA, AS PER MAP RECORDED IN
BOOK 129 PAGES 87 TROUGH 89 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF
SAID COUNTY

_____          _____
ERIC M. MURPHY                                            GLENDA R. MURPHY

Document Date: _September 5, 2003_

STATE OF CALIFORNIA
COUNTY OF _SAN BERNARDINO_      )SS
On _SEPTEMBER 8, 2003_ before me, _LA TESA L. MOORE_
personally appeared _ERIC M. MURPHY + GLENDA R. MURPHY_
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument
the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature _____

This area for official notarial seal.



Mail Tax Statements to:   SAME AS ABOVE  or  Address Noted Below

_____

EXHIBIT 6

```
04-21-11  12:18PM  FROM-FAX                          +17148988215           T-072  P.03/13  F-885
```

FILE #                 19586125            FNMA #
PREPARED FOR           WISDOM FINANCIAL S - 10014362      DATE COMPLETED 4/21/2011
                       221 N. HARBOR BLVD., SUITE E       DATE ORDERED    4/21/2011      RQ'T BY    DAVID THAIS
                       FULLERTON, CA 92832                REPOSITORIES    XP
                                                          PRICE           $5.35          PRP'D BY
PROPERTY ADDRESS                                          REF. #                         LOAN TYPE

APPLICANT                        APPLICANT
SOC SEC #                        MURPHY, GLENDA                                          CO-APPLICANT
MARITAL STATUS                   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    DOB       CO-APPLICANT
                                                          SOC SEC #
                                                          DEPENDENTS                                          DOB

| R E V O L V C O D E | | CREDITOR | DATE REPORTED | HIGH CREDIT OR LIMIT | BALANCE | PAST DUE | MO REV | 30 | 60 | 90+ | STATUS |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | DATE OPENED | DLA | ACCT TYPE | TERMS | | | | | SOURCE |

CREDIT

CONVENTIONAL REAL ESTATE LOAN, INCLUDING PURCHASE MONEY FIRST

P  B  FREMONT INVESTMENT &        09/03   09/03   $229500            $0      1   0   0   0   PAID
      1000125142                  --/--   MTG     360   $0            $0                          XP
      CONVENTIONAL REAL ESTATE LOAN, INCLUDING PURCHASE MONEY FIRST

J  B  GEMB/HOME DESIGN-FLO        11/07   08/98   $3000              $0      99  0   0   0   PAID
      534818544041                11/01   REV     $0                         XP

J  B  GEMB/JCP                    10/07   08/96   $736               $0      99  0   0   0   PAID
      600989921501                --/--   REV     $0                         XP
      ACCOUNT CLOSED AT CONSUMER'S REQUEST

J  B  GEMB/JCP                    10/07   12/96   $239               $0      99  0   0   0   PAID
      600989921771                --/--   REV     $0                         XP
      ACCOUNT CLOSED AT CONSUMER'S REQUEST

J  B  GEMB/JCP                    09/07   05/96   $736               $0      99  0   0   0   PAID
      600989927305                --/--   REV     $0                         XP
      ACCOUNT CLOSED AT CONSUMER'S REQUEST

A  B  GEMB/JCP                    09/04   11/93   $2708              $0      93  0   0   0   PAID
      600989926175                --/--   REV     $0                         XP
      ACCOUNT CLOSED AT CONSUMER'S REQUEST

B  B  GEMB/JCP                    11/02   08/96   $252               $0      86  0   0   0   PAID
      600989929345                --/--   REV     $0                         XP
      ACCOUNT CLOSED AT CONSUMER'S REQUEST

B  B  GEMB/MERVYNS                10/09   03/07   $700               $0      32  0   0   0   PAID
      604593365110                09/07   REV     $0                         XP
      ACCOUNT CLOSED AT CREDIT GRANTOR'S REQUEST

J  B  GEMB/PEP BOYS               11/05   10/97   $1300              $0      65  0   0   0   PAID
      601916090186                11/05   REV     $0                         XP
      ACCOUNT CLOSED AT CONSUMER'S REQUEST

B  B  GEMB/WALMART                09/07   05/95   $900               $0      99  0   0   0   PAID
      603220745103                11/01   REV     $0                         XP
      ACCOUNT CLOSED AT CONSUMER'S REQUEST

   B  GMAC MORTGAGE               10/09   10/05   $275000            $0      9   0   0   0   PAID
      ECOA KEY: B=BORROWER; C=CO-BORROWER; J=JOINT; U=UNDESIGNATED; A=AUTHORIZED USER; P=PARTICIPANT; S=CO-SIGNER

CREDIT PLUS, 31550 WINTERPLACE PARKWAY, SALISBURY, MD 21804 (P) (800) 258-3488 (F) (800) 258-5287

This information is furnished in response to an inquiry for the purpose of evaluating credit risk. It was been obtained from sources deemed reliable, the accuracy of which not guaranteed. The account has agreed to maintain adequate policies for any damages arising from misuse of this information, and this report is fumished in accordance with applicable law. If there be listed in this information and access the information in the possession of Fuller Law 91-508, the Fair Credit Reporting Act. Reporting furnished services are of Residential Bartiage Credit Report meet the standards provided by FNMA, FHMC, FHA, VA, and the Farmers Home Administration.

https://credit.creditplus.com/shared/reports/print_htm.aspx?reportType=PRBQ&orderid=1...   4/21/2011

EXHIBIT - 7

Recorded in Official Records, County of San Bernardino          11/22/2005
                                                                2:35 PM

**LARRY WALKER**                                                SG
Auditor/Controller – Recorder

Recording Requested By:                 C  Priority Mail
AMERICAN DOCUMENT SERVICES INC.

And When Recorded Mail To:        Doc#:  2005–0879459    | Titles:  1 | Pages:  1
American Document Services, Inc.
250 COMMERCE, 2ND FLOOR                 | Fees    | 8.00
IRVINE, CA  92602                                          | Taxes   | 0.00
                                                          | Other   | 0.00
                                                          | PAID    | $8.00

_____ Space above for Recorder's use _____

MERS MIN#: 100194410001251425  PHONE#: (888) 679-6377
Loan#: 1000000806   Service#: 125149RL1  ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖ +

## SUBSTITUTION OF TRUSTEE

WHEREAS, ERIC M. MURPHY AND GLENDA R. MURPHY, HUSBAND AND WIFE AS JOINT
TENANTS as Trustor, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS NOMINEE FOR
FREMONT INVESTMENT & LOAN, as the Original Beneficiary under a Deed of Trust, dated
SEPTEMBER 05, 2003 and recorded SEPTEMBER 15, 2003 as Instrument No. 20030691900, in Book No.
—, at Page No. —, of official records of SAN BERNARDINO county, State of CALIFORNIA.
WHEREAS, the undersigned desires to substitute a Trustee under said Deed of Trust in the place and stead of
FREMONT GENERAL CREDIT CORP.. NOW THEREFORE, the undersigned hereby substitutes TICOR
TITLE INSURANCE COMPANY, 250 COMMERCE, 2ND FLOOR IRVINE, CA  92602,, as Trustee under
said Deed of Trust.
Dated: OCTOBER 21, 2005
Beneficiary:
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR FREMONT
INVESTMENT & LOAN

By: _____
Elizabeth Stetson, Assistant Vice President

State of  CALIFORNIA                }
County of  ORANGE                   } ss.

On NOVEMBER 07, 2005 , before me, Sylwia Drapalski, personally appeared Elizabeth Stetson, Assistant
Vice President  personally known to me (or proved to me on the basis of satisfactory evidence) to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

_____
(Notary Name): Sylwia Drapalski

OFFICIAL SEAL
SYLWIA DRAPALSKI
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1504886
ORANGE COUNTY
MY COMM. EXP. AUG. 1, 2008

EXHIBIT 8

OCT 02 2006 11:28 FR FIDELITY NATL TITLE 4087782132 TO [_____]

Lender Service - PLD
Fidelity National Financial

**RECORDING REQUESTED BY:**
Fidelity National Title Company
Escrow No.: 06-7009340-DH
Locate No.: CAIND0000-0943-0007-
Title No.:

**When Recorded Mail Document and Tax Statement To:**
Glenda R. Murphy and
Eric M. Murphy
5812 San Sevaine Road
Rancho Cucamonga, CA 91739

Recorded in Official Records, County of San Bernardino          10/10/2006
                                                                 8:00 AM
**LARRY WALKER**                                                 MA
Auditor/Controller — Recorder

685 Fidelity/Santa Ana

Doc#:   2006 – 0688087     Titles: 1     Pages: 2

| | |
|---|---|
| Fees | 9.00 |
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | 59.00 |

APN: 0209-312-59                    SPACE ABOVE THIS LINE FOR RECORDER'S USE

28/6230                    **GRANT DEED**

The undersigned grantor(s) declare(s)          *Adding Joint Tenancy*
Documentary transfer tax is $     City Transfer Tax is $
[    ] computed on full value of property conveyed, or
[    ] computed on full value less value of liens or encumbrances remaining at time of sale,
[    ] Unincorporated Area X City of Rancho Cucamonga,
"This conveyance changes the manner in which title is held, grantor(s) and grantee(s) remain the same and continue to hold the same proportionate interest, R & T 11925."

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, Eric M. Murphy and Glenda R. Murphy, husband and wife

hereby GRANT(S) to Glenda R. Murphy and Eric M. Murphy, wife and husband as Joint Tenants

the following described real property in the City of Rancho Cucamonga, County of San Bernardino, State of California:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

DATED: October 2, 2006

STATE OF CALIFORNIA
COUNTY OF Los Angeles
ON 10/2/06 before me,
Kathy L Gamboa Notary Public
, personally appeared Eric M Murphy
and Glenda R. Murphy
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Signature _Kathy L Gamboa_          (Seal)

_Eric M. Murphy_
Eric M. Murphy

_Glenda R Murphy_
Glenda R. Murphy

Glenda

KATHY L. GAMBOA
Commission # 1532763
Notary Public - California
Los Angeles County
My Comm. Expires Dec 9, 2008

MAIL TAX STATEMENTS AS DIRECTED ABOVE

FD-213 (Rev 7/96)                    GRANT DEED
(grantdf)(07-06)

EXHIBIT 9

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

APN # 0209-312-59

Recorded in Official Records, County of San Bernardino



**LARRY WALKER**
Auditor/Controller – Recorder

691 First American

7/07/2010
8:00 AM
BGJ

When recorded mail to:
American Home Mortgage Servicing, Inc.
P.O. Box 631730
Irving, TX 75063-1730

| Doc#: 2010 – 0270368 | Titles: 1 | Pages: |
|---|---|---|
| | Fees | 12.00 |
| | Taxes | 0.00 |
| | Other | 0.00 |
| | PAID | $12.00 |

M&H# CA-10-28262

Space above this line for recorders use

Loan # ending with: 8362
MERS # 100024200014613489

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to **U.S. Bank National Association, as Trustee for MASTR Adjustable Rate Mortgages Trust 2007-1, Mortgage Pass-Through Certificates, Series 2007-1** all beneficial interest under that certain Deed of Trust dated 09/29/2006 executed by **Glenda R. Murphy and Eric M Murphy, wife and Husband as Joint Tenants**, as Trustor(s) to **LSI Division**, as Trustee and recorded as Instrument No. 2006-0688088 on 10/10/2006, of Official Records, in the office of the County Recorder of San Bernardino County, CA commonly referred to as **9965 McKinley Street, Rancho Cucamonga, CA 91730** and legally describing land therein as:

Lot 18 of Tract No. 9035, as per map recorded in Book 129 Pages 87 through 89 inclusive of Maps, in the office of the County Recorder of said County.

together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Dated: May 25, 2010

Mortgage Electronic Registration Systems, Inc as nominee for American Brokers Conduit

Name: Theresa Esposito
Title: Vice President

State of __Florida__ )
County of __Duval__ ) ss
 )

On 5/25/10 (date) before me, __Brenda L. Frazier__ (Insert name of Notary Public and Title) the undersigned Notary Public, personally appeared __Theresa Esposito__ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me the he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of __Florida__ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature __Brenda L. Frazier__ (Seal)
Name: Brenda L. Frazier
Notary Commission Expiration: 4-30-2013

NOTARY PUBLIC-STATE OF FLORIDA
Brenda L. Frazier
Commission #DD885641
Expires: APR. 30, 2013
BONDED THRU ATLANTIC BONDING CO., INC.