Branch :O25 User :RSOL

any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict

DOC #:324550                    APPL #:0001461348

-6A(CA) (0005).01              Page 10 of 15          Initials: [signature]          Form 3005 1/01

Branch :025   User :ESOL

shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

DOC #:324551                    APPL #:0001461348

●●●● -6A(CA) (0005).01              Page 11 of 15              Initials: _____   Form 3005   1/01

Branch :025    User :0040

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

DOC  #:324552                APPL #:0001461348

-6A(CA) (0005).01                Page 12 of 15                Initials: [signature]        Form 3005  1/01

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

DOC #:324553                    APPL #:0001461348

-6A(CA) (0005).01                    Page 13 of 15                    Initials: _____                    Form 3005  1/01

Branch :O25   User :Rscd

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                    _____ (Seal)
                                                 Glenda R Murphy                -Borrower

                                                      Glenda

_____                    _____ (Seal)
                                                 Eric M Murphy                  -Borrower

                                                      Eric

_____ (Seal)             _____ (Seal)
                             -Borrower                                          -Borrower


_____ (Seal)             _____ (Seal)
                             -Borrower                                          -Borrower


_____ (Seal)             _____ (Seal)
                             -Borrower                                          -Borrower


DOC  #:324554                   APPL #:0001461348                   Form 2005  1/01
-6A(CA) (0005).01                   Page 14 of 15

**State of California**
**County of** ~~San Bernardino~~ *Los Angeles* } ss.

On *10/2/06* before me, *Kathy L Gamboa, Notary Public*
personally appeared

Glenda R Murphy and Eric M Murphy

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

*Kathy L Gamboa* (Seal)

KATHY L GAMBOA
Commission # 1532763
Notary Public - California
Los Angeles County
My Comm. Expires Dec 9, 2008

DOC  #:324555                     APPL #:0001461348

Initials:

-6A(CA) (0005).01                 Page 15 of 15          Form 3005  1/01

## ADJUSTABLE RATE RIDER

### (12-MTA Index - Payment and Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this <u>29th</u> day of <u>September , 2006</u> and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to _____ <u>American Brokers Conduit</u>

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

<u>9965 McKinley Street, Rancho Cucamonga, CA  91730</u>

(Property Address)

THIS RIDER CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. BECAUSE MY INTEREST RATE WILL CHANGE MORE FREQUENTLY THAN MY MONTHLY PAYMENT, AND BECAUSE THERE ARE LIMITATIONS ON MY MONTHLY PAYMENT INCREASES, THE AMOUNT OF MY MONTHLY PAYMENT MAY NOT FULLY PAY THE INTEREST THAT ACCRUES. AS A RESULT, THE PRINCIPAL AMOUNT I MUST REPAY COULD BE LARGER THAN THE AMOUNT I ORIGINALLY BORROWED, BUT NOT MORE THAN <u>125.000%</u> OF THE ORIGINAL AMOUNT (OR $ <u>462,500.00</u> ). MY INTEREST RATE CAN NEVER EXCEED THE LIMIT STATED IN THE NOTE AND RIDER.   A BALLOON PAYMENT MAY BE DUE AT MATURITY.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

### A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

Interest will be charged on unpaid Principal until the full amount has been paid.  I will pay interest at a yearly rate of <u>1.000</u> % until <u>October 31, 2006</u> , and the initial monthly payment provided for in the Note will be based on this rate. Commencing <u>November 1, 2006</u> , I will pay interest at a yearly rate of <u>8.214</u> %.  Thereafter, the interest rate I will pay may change in accordance with Section 4 of the Note.

Page 1 of 5

AHM2029R(MULT) (0106)

Section 4 of the Note provides for changes in the interest rate and monthly payment as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may further change on the _____1st_____ day of _December, 2006_____, and on that day every month thereafter. Each such date on which my interest rate could change is called a "Change Date."

**(B) The Index**

On each Change Date, my interest rate will be based on an Index. The "Index" is the Twelve-Month Average, determined as set forth below, of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H. 15)" (the "Monthly Yields"). The Twelve-Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12.

The most recent Index figure available as of the date 15 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Interest Rate Change**

Before each Change Date, the Note Holder will calculate my new interest rate by adding _Three and 550 Thousandths_____ percentage points _3.550_____ % ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-thousandth of one percentage point (0.001%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date. In the event a new Index is selected, pursuant to paragraph 4(B), a new Margin will be determined. The new Margin will be the difference between the average of the old Index for the most recent three year period which ends on the last date the Index was available plus the Margin on the last date the old Index was available and the average of the new Index for the most recent three year period which ends on that date (or if not available for such three year period, for such time as it is available). This difference will be rounded to the next higher 1/8 of 1%.

**(D) Interest Rate Limit**

My interest rate will never be greater than _____9.950_ % ("Cap"), except that following any sale or transfer of the property which secures repayment of this Note after the first interest rate Change Date, the maximum interest rate will be the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of such sale or transfer.

**(E) Payment Change Dates**

Effective every year commencing _____December 1st, 2007_____, and on the same date each twelfth month thereafter ("Payment Change Date"), the Note Holder will determine the amount of the monthly payment that would be sufficient to repay the projected Principal balance I am expected to owe as of the Payment Change Date in full on the maturity date at the interest rate that will become effective one month prior to the Payment Change Date in substantially equal payments. The result of this calculation is the new amount of my monthly

Doc # 944736/Image: 944736.prn   App# 0001461348

*106*

payment, subject to Section 4(F) below, and I will make payments in the new amount until the next Payment Change Date unless my payments are changed earlier under Section 4(H) of the Note.

### (F) Monthly Payment Limitations

Unless Section 4(H) and 4(I) below apply, the amount of my new monthly payment, beginning with a Payment Change Date, will be limited to 7 ½% more or less than the amount I have been paying. This payment cap applies only to the principal and interest payment and does not apply to any escrow payments Lender may require under the Security Instrument.

### (G) Changes in My Unpaid Principal Due to Negative Amortization or Accelerated

#### Amortization

Since my initial monthly payment will be based on the Initial Rate, which may be different than the Subsequent Rate, my initial monthly payment could be less or greater than the amount of the interest portion (the "Interest Portion") of the monthly principal and interest payment that would be sufficient to repay the unpaid Principal I owe in full on the maturity date in substantially equal payments. Additionally, since my payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 4(F), my monthly payment could be less or greater than the amount of the Interest Portion. For each month that the monthly payment is less than the Interest Portion, the Note Holder will subtract the monthly payment from the amount of the Interest Portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the current interest rate. For each month that the monthly payment is greater than the Interest Portion, the Note Holder will apply the excess towards a principal reduction of the Note.

### (H) Limit on My Unpaid Principal; Increased Monthly Payment

My unpaid Principal can never exceed a maximum amount equal to ___125.000%___ of the principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that ___125.000%___ limitation, I will begin paying a new monthly payment until the next Payment Change Date notwithstanding the 7 ½% annual payment increase limitation. The new monthly payment will be an amount which would be sufficient to repay my then unpaid Principal in full on the maturity date at the interest rate in effect one month prior to the payment due date in substantially equal payments.

### (I) Required Full Monthly Payment

On the ___Five___ anniversary of the due date of the first monthly payment, and on that same day every ___Five___ year thereafter, the monthly payment will be adjusted without regard to the payment cap limitation in Section 4(F).

### (J) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any questions I may have regarding the notice.

### (K) Failure to Make Adjustments

If for any reason Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree that Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold Note Holder responsible for any damages to me which may result from Note

Page 3 of 5

AHM2029R(MULT) (0106)

Doc # 944737/Image: 944737.prn  App# 0001461348

Branch :025  User :RSOL

Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial prepayment of unpaid Principal.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.  If all or any part of the Property or any interest in the Property is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if:  (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee;  (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Agreement or other obligations related to the Note or other loan document is acceptable to Lender, (c) Assuming party executes Assumption Agreement acceptable to Lender at its sole choice and discretion, which Agreement may include an increase to Cap as set forth below and (d) payment of Assumption Fee if requested by Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption, and Lender may increase the maximum interest rate limit to the higher of the Cap or 5 percentage points greater than the interest rate in effect at the time of the transfer.  Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument.  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender has entered into a written assumption agreement with transferee and formally releases Borrower.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.  Borrower agrees to execute any document necessary to reform this Agreement to accurately reflect the terms of the Agreement between Borrower and Beneficiary or if the original Note, Trust Deed or other document is lost, mutilated or destroyed.

Page 4 of 5                          AHM2029R(MULT) (0106)

Doc # 944738/Image: 944738.prn  App# 0001461348

Branch :025   User :RStOL

_(signature)_ __(Seal)__
Glenda R Murphy   -Borrower

_(signature)_ __(Seal)__
Eric M Murphy   -Borrower

Glenda _____ (Seal)
          -Borrower

Eric _____ (Seal)
          -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

Page 5 of 5                    AHM2029R(MULT) (0106)

Doc # 944739/Image: 944739.prn   App# 0001461348

/109

Loan #: 0001461348

## PREPAYMENT RIDER TO SECURITY INSTRUMENT

THIS PREPAYMENT RIDER is made this __29th__ of __September, 2006__ , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to __American Brokers Conduit__ _____(the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

__9965 McKinley Street, Rancho Cucamonga, CA 91730__
[Property Address]

**PREPAYMENT COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

I have the right to make payments of principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

Except as provided below, I may make a Full Prepayment or a Partial Prepayment at any time without paying any penalty. If within the first __three__ ( _3_ ) year(s) after the execution of the Note, I make a Full Prepayment or Partial Prepayment(s) of more than twenty percent (20%) of the original principal amount in a twelve month period immediately preceding the date of prepayment, I will pay a prepayment charge in an amount equal to the payment of six (6) months' advance interest on the amount prepaid which is in excess of twenty percent (20%) of the original principal amount of the Note in that twelve month period. Interest will be calculated using the rate in effect at the time of prepayment.

If I make a partial prepayment equal to one or more of my monthly payments, the due date of my next scheduled monthly payment may be advanced no more than one month. If I make a partial prepayment in any other amount, I must still make all subsequent monthly payments as scheduled.

**NOTICE TO THE BORROWER**
Do not sign this Prepayment Rider before you read it. This Prepayment Rider provides for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the Note.

Multi-State Prepayment Rider
(Rev4-06)                                    page 1 of 2
Doc # 945225/Image:945225.prn App# 0001461348

AHM-2034S(MULTI)

*110*

Branch :O25   User :RSOL

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment Rider.

_____          _____
Glenda R Murphy                           Eric M Murphy

Glenda                                    Eric

Multi-State Prepayment Rider
(Rev4-06)                    page 2 of 2
Doc # 945236/Image:945236.prn App# 0001461348                          AHM-2034S(MULTI)

Branch :O25   User :RSOL

Order No. 52816230 - 2816230-53

## EXHIBIT "ONE"

Lot 18 of Tract No. 9035, as per map recorded in Book 129 Pages 87 through 89 inclusive of Maps, in the office of the County Recorder of said County.

Assessor's Parcel No: 0209-312-59

2                                                         (Rev. 11/17/04)

113

Exhibit 11

# EXHIBIT 11

## San Bernardino County Assessor



| | |
|---|---|
| Parcel | 0209312590000 |
| Parcel Status | ACTIVE |
| Parcel Type | REAL PROPERTY |
| Property ID | |
| Tax Status | ASSESSED BY COUNTY |
| Use Code | PUD |
| Land Access | PUBLIC PAVED |
| Size | 5,000 TO 7,199 SQ. FEET |
| Land Type | SINGLE FAMILY RESIDENTIAL |
| District | ONTARIO |
| Resp Group | REAL PROPERTY |
| Resp Unit | RES ZONE(MAX 14 UTS) &USE EX HPC/MHM(1-14 UTS,CHURC |

## Parcel History

| Event Date | 10/10/2006 | |
|---|---|---|
| Event Group/Type | TRANSFER - 100% PER RECORDED DOCUMENT | Multi Parcel List |
| Multi Parcel | No | |

| Event Date | 09/15/2003 | |
|---|---|---|
| Event Group/Type | TRANSFER - 100% PER RECORDED DOCUMENT | Multi Parcel List |
| Multi Parcel | No | |

| Event Date | 12/31/2000 | |
|---|---|---|
| Event Group/Type | REVIEW - PROP 8 INITIATED BY ASSESSOR | Multi Parcel List |
| Multi Parcel | No | |

| Event Date | 12/31/1999 | |
|---|---|---|
| Event Group/Type | REVIEW - PROP 8 INITIATED BY ASSESSOR | Multi Parcel List |
| Multi Parcel | No | |

115

## San Bernardino County Assessor



| Event Date | 12/31/1998 | Multi Parcel List |
| Event Group/Type | REVIEW - PROP 8 INITIATED BY ASSESSOR | |
| Multi Parcel | No | |

| Event Date | 12/31/1998 | Multi Parcel List |
| Event Group/Type | REVIEW - PROP 8 INITIATED BY ASSESSOR | |
| Multi Parcel | No | |

| Event Date | 12/31/1998 | Multi Parcel List |
| Event Group/Type | REVIEW - PROP 8 INITIATED BY ASSESSOR | |
| Multi Parcel | No | |

| Event Date | 10/17/1994 | Multi Parcel List |
| Event Group/Type | TRANSFER - WORKED IN OLD SYSTEM (100% OR PARTIAL) | |
| Multi Parcel | No | |

| Event Date | 07/03/1989 | Multi Parcel List |
| Event Group/Type | TRANSFER - WORKED IN OLD SYSTEM (100% OR PARTIAL) | |
| Multi Parcel | No | |

| Event Date | 06/03/1989 | Multi Parcel List |
| Event Group/Type | TRANSFER - WORKED IN OLD SYSTEM (100% OR PARTIAL) | |
| Multi Parcel | No | |

| Event Date | 12/05/1988 | Multi Parcel List |
| Event Group/Type | TRANSFER - WORKED IN OLD SYSTEM (100% OR PARTIAL) | |
| Multi Parcel | No | |

| Event Date | 03/05/1979 | Multi Parcel List |
| Event Group/Type | TRANSFER - WORKED IN OLD SYSTEM (100% OR PARTIAL) | |
| Multi Parcel | No | |

## San Bernardino County Assessor



| | | Multi Parcel List |
|---|---|---|
| **Event Date** | 06/28/1977 | |
| **Event Group/Type** | TRANSFER - WORKED IN OLD SYSTEM (100% OR PARTIAL) | |
| **Multi Parcel** | No | |

| | | Multi Parcel List |
|---|---|---|
| **Event Date** | 02/28/1977 | 0209312540000 NEW-SPL |
| **Event Group/Type** | CREATE - SPLIT | 0209312550000 NEW-SPL |
| **Multi Parcel** | Yes | 0209312560000 NEW-SPL |
| | | 0209312570000 NEW-SPL |
| | | 0209312580000 NEW-SPL |
| | | 0209312590000 NEW-SPL |
| | | 0209312600000 NEW-SPL |
| | | 0209312610000 NEW-SPL |
| | | 0209312620000 NEW-SPL |
| | | 0209312630000 NEW-SPL |
| | | 0209312640000 NEW-SPL |
| | | 0209312650000 NEW-SPL |
| | | 0209312660000 NEW-SPL |
| | | 0209312670000 NEW-SPL |
| | | 0209312680000 NEW-SPL |
| | | 0209312690000 NEW-SPL |
| | | 0209312700000 NEW-SPL |
| | | 0209312710000 NEW-SPL |
| | | 0209312720000 NEW-SPL |
| | | 0209312730000 NEW-SPL |
| | | 0209312740000 NEW-SPL |
| | | 0209312750000 NEW-SPL |
| | | 0209312760000 NEW-SPL |
| | | 0209313010000 NEW-SPL |
| | | 0209313020000 NEW-SPL |
| | | 0209313030000 NEW-SPL |
| | | 0209313040000 NEW-SPL |

Exhibit 12      118

RECORDING REQUESTED BY
**Premium Title of California**

AND WHEN RECORDED MAIL TO:
**Western Progressive, LLC**
**Northpark Town Center**
**1000 Abernathy Rd. NE; Bldg. 400, Suite 200**
**Atlanta, GA 30328**

Electronically Recorded in Official Records, County of San Bernardino   3/12/2019 09:36 AM GA

**BOB DUTTON**
ASSESSOR - RECORDER - CLERK
432 Premium Title of CA, Inc.

Doc# **2019-0075263**

Titles 1     Pages 3
Fees          30.
Taxes          .
CA SB2 Fee    75.
Others         .
Paid         105.

T.S. No.: **2018-02992-CA**
Property Address: **9965 McKinley Street, Rancho Cucamonga, CA 91730**
A.P.N.:**0209-312-59-0-000**
SPACE ABOVE THIS LINE FOR RECORDER'S USE

## NOTICE OF TRUSTEE'S SALE

**PURSUANT TO CIVIL CODE § 2923.3(a) and (d), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACION DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE TO PROPERTY OWNER:
YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 09/29/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

Trustor: **Glenda R. Murphy and Eric M. Murphy, wife and husband as joint tenants**
Duly Appointed Trustee: **Western Progressive, LLC**
Deed of Trust Recorded **10/10/2006** as Instrument No. **2006-0688088** in Book ---, Page --- **and** of Official Records in the office of the Recorder of **San Bernardino** County, California
Date of Sale: **04/23/2019** at **01:00 PM**
Place of Sale:      **NEAR THE FRONT STEPS LEADING UP TO THE CITY OF CHINO CIVIC CENTER, 13220 CENTRAL AVENUE, CHINO, CA 91710**

Estimated amount of unpaid balance, reasonably estimated costs and other charges: **$443,198.58**

V     CA NOS 0817

Page 1 of 3

2342291664

TS No.: 2018-02992-CA

# NOTICE OF TRUSTEE'S SALE

THE TRUSTEE WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK DRAWN ON A STATE OR NATIONAL BANK, A CHECK DRAWN BY A STATE OR FEDERAL CREDIT UNION, OR A CHECK DRAWN BY A STATE OR FEDERAL SAVINGS AND LOAN ASSOCIATION, A SAVINGS ASSOCIATION OR SAVINGS BANK SPECIFIED IN SECTION 5102 OF THE FINANCIAL CODE AND AUTHORIZED TO DO BUSINESS IN THIS STATE:

All right, title, and interest conveyed to and now held by the trustee in the hereinafter described property under and pursuant to a Deed of Trust described as:

More fully described in said Deed of Trust.

Street Address or other common designation of real property: **9965 McKinley Street, Rancho Cucamonga, CA 91730**
**A.P.N.: 0209-312-59-0-000**

The undersigned Trustee disclaims any liability for any incorrectness of the street address or other common designation, if any, shown above.

The sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by the Deed of Trust with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is: **$443,198.58.**

**Note:** Because the Beneficiary reserves the right to bid less than the total debt owed, it is possible that at the time of the sale the opening bid may be less than the total debt.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse.**

The beneficiary of the Deed of Trust has executed and delivered to the undersigned a written request to commence foreclosure, and the undersigned caused a Notice of Default and Election to Sell to be recorded in the county where the real property is located.

Version 1.1 CA NOS 0817

TS No.: 2018-02992-CA

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER
# DEED OF TRUST

**Street Address or other common designation of real property:**

**9965 MCKINLEY STREET, RANCHO CUCAMONGA, CA 91730**

The subject obligation includes **ONE NOTE(S) FOR THE ORIGINAL** sum of $ 370,000.00. A breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:

Installment of Principal and Interest plus impounds and/or advances which became due on 06/01/2018 plus late charges, and all subsequent installments of principal, interest, balloon payments, plus impounds and/or advances and late charges that become payable.

You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.

Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.

Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.

That by reason thereof, the present beneficiary under such deed of trust, has delivered to said duly appointed Trustee, a written request to commence foreclosure, and has deposited with said duly appointed Trustee, a copy of the deed of trust and other documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

1.The mortgage servicer contacted the borrower to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.5. Thirty days, or more, have passed since the initial contact was made.

See attached Declaration.

Dated: December 3, 2018

Western Progressive, LLC, as Trustee for beneficiary

Iman Walcott, Trustee Sale Assistant

**WESTERN PROGRESSIVE, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

Exhibit 13

PUBLIC LAW 100-709—NOV. 23, 1988        102 STAT. 4725

Public Law 100–709
100th Congress

## An Act

To amend the Truth in Lending Act to establish additional disclosure, advertising, and other requirements for home equity loans.

Nov. 23, 1988
[H.R. 3011]

Home Equity
Loan Consumer
Protection Act of
1988.
15 USC 1601
note.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE.**

This Act may be cited as the "Home Equity Loan Consumer Protection Act of 1988".

**SEC. 2. DISCLOSURE AND ADVERTISING REQUIREMENTS FOR HOME EQUITY LOANS.**

(a) DISCLOSURE REQUIREMENTS.—Chapter 2 of the Truth in Lending Act (15 U.S.C. 1631 et seq.) is amended by inserting after section 127 the following new section:

"SEC. 127A. DISCLOSURE REQUIREMENTS FOR OPEN END CONSUMER CREDIT PLANS SECURED BY THE CONSUMER'S PRINCIPAL DWELLING.

15 USC 1637a.

"(a) APPLICATION DISCLOSURES.—In the case of any open end consumer credit plan which provides for any extension of credit which is secured by the consumer's principal dwelling, the creditor shall make the following disclosures in accordance with subsection (b):

"(1) FIXED ANNUAL PERCENTAGE RATE.—Each annual percentage rate imposed in connection with extensions of credit under the plan and a statement that such rate does not include costs other than interest.

"(2) VARIABLE PERCENTAGE RATE.—In the case of a plan which provides for variable rates of interest on credit extended under the plan—

"(A) a description of the manner in which such rate will be computed and a statement that such rate does not include costs other than interest;

"(B) a description of the manner in which any changes in the annual percentage rate will be made, including—

"(i) any negative amortization and interest rate carryover;

"(ii) the timing of any such changes;

"(iii) any index or margin to which such changes in the rate are related; and

"(iv) a source of information about any such index;

"(C) if an initial annual percentage rate is offered which is not based on an index—

"(i) a statement of such rate and the period of time such initial rate will be in effect; and

"(ii) a statement that such rate does not include costs other than interest;

"(D) a statement that the consumer should ask about the current index value and interest rate;

"(E) a statement of the maximum amount by which the annual percentage rate may change in any 1-year period or a statement that no such limit exists;

"(F) a statement of the maximum annual percentage rate that may be imposed at any time under the plan;

"(G) subject to subsection (b)(3), a table, based on a $10,000 extension of credit, showing how the annual percentage rate and the minimum periodic payment amount under each repayment option of the plan would have been affected during the preceding 15-year period by changes in any index used to compute such rate;

"(H) a statement of—

"(i) the maximum annual percentage rate which may be imposed under each repayment option of the plan;

"(ii) the minimum amount of any periodic payment which may be required, based on a $10,000 outstanding balance, under each such option when such maximum annual percentage rate is in effect; and

"(iii) the earliest date by which such maximum annual interest rate may be imposed; and

"(I) a statement that interest rate information will be provided on or with each periodic statement.

"(3) OTHER FEES IMPOSED BY THE CREDITOR.—An itemization of any fees imposed by the creditor in connection with the availability or use of credit under such plan, including annual fees, application fees, transaction fees, and closing costs (including costs commonly described as 'points'), and the time when such fees are payable.

"(4) ESTIMATES OF FEES WHICH MAY BE IMPOSED BY THIRD PARTIES.—

"(A) AGGREGATE AMOUNT.—An estimate, based on the creditor's experience with such plans and stated as a single amount or as a reasonable range, of the aggregate amount of additional fees that may be imposed by third parties (such as governmental authorities, appraisers, and attorneys) in connection with opening an account under the plan.

"(B) STATEMENT OF AVAILABILITY.—A statement that the consumer may ask the creditor for a good faith estimate by the creditor of the fees that may be imposed by third parties.

"(5) STATEMENT OF RISK OF LOSS OF DWELLING.—A statement that—

"(A) any extension of credit under the plan is secured by the consumer's dwelling; and

"(B) in the event of any default, the consumer risks the loss of the dwelling.

"(6) CONDITIONS TO WHICH DISCLOSED TERMS ARE SUBJECT.—

"(A) PERIOD DURING WHICH SUCH TERMS ARE AVAILABLE.— A clear and conspicuous statement—

"(i) of the time by which an application must be submitted to obtain the terms disclosed; or

"(ii) if applicable, that the terms are subject to change.

PUBLIC LAW 100–709—NOV. 23, 1988     102 STAT. 4727

"(B) RIGHT OF REFUSAL IF CERTAIN TERMS CHANGE.—A statement that—

"(i) the consumer may elect not to enter into an agreement to open an account under the plan if any term changes (other than a change contemplated by a variable feature of the plan) before any such agreement is final; and

"(ii) if the consumer makes an election described in clause (i), the consumer is entitled to a refund of all fees paid in connection with the application.

"(C) RETENTION OF INFORMATION.—A statement that the consumer should make or otherwise retain a copy of information disclosed under this subparagraph.

"(7) RIGHTS OF CREDITOR WITH RESPECT TO EXTENSIONS OF CREDIT.—A statement that—

"(A) under certain conditions, the creditor may terminate any account under the plan and require immediate repayment of any outstanding balance, prohibit any additional extension of credit to the account, or reduce the credit limit applicable to the account; and

"(B) the consumer may receive, upon request, more specific information about the conditions under which the creditor may take any action described in subparagraph (A).

"(8) REPAYMENT OPTIONS AND MINIMUM PERIODIC PAYMENTS.—The repayment options under the plan, including—

"(A) if applicable, any differences in repayment options with regard to—

"(i) any period during which additional extensions of credit may be obtained; and

"(ii) any period during which repayment is required to be made and no additional extensions of credit may be obtained;

"(B) the length of any repayment period, including any differences in the length of any repayment period with regard to the periods described in clauses (i) and (ii) of subparagraph (A); and

"(C) an explanation of how the amount of any minimum monthly or periodic payment will be determined under each such option, including any differences in the determination of any such amount with regard to the periods described in clauses (i) and (ii) of subparagraph (A).

"(9) EXAMPLE OF MINIMUM PAYMENTS AND MAXIMUM REPAYMENT PERIOD.—An example, based on a $10,000 outstanding balance and the interest rate (other than a rate not based on the index under the plan) which is, or was recently, in effect under such plan, showing the minimum monthly or periodic payment, and the time it would take to repay the entire $10,000 if the consumer paid only the minimum periodic payments and obtained no additional extensions of credit.

"(10) STATEMENT CONCERNING BALLOON PAYMENTS.—If, under any repayment option of the plan, the payment of not more than the minimum periodic payments required under such option over the length of the repayment period—

"(A) would not repay any of the principal balance; or

"(B) would repay less than the outstanding balance by the end of such period,

as the case may be, a statement of such fact, including an explicit statement that at the end of such repayment period a balloon payment (as defined in section 147(f)) would result which would be required to be paid in full at that time.

"(11) NEGATIVE AMORTIZATION.—If applicable, a statement that—

"(A) any limitation in the plan on the amount of any increase in the minimum payments may result in negative amortization;

"(B) negative amortization increases the outstanding principal balance of the account; and

"(C) negative amortization reduces the consumer's equity in the consumer's dwelling.

"(12) LIMITATIONS AND MINIMUM AMOUNT REQUIREMENTS ON EXTENSIONS OF CREDIT.—

"(A) NUMBER AND DOLLAR AMOUNT LIMITATIONS.—Any limitation contained in the plan on the number of extensions of credit and the amount of credit which may be obtained during any month or other defined time period.

"(B) MINIMUM BALANCE AND OTHER TRANSACTION AMOUNT REQUIREMENTS.—Any requirement which establishes a minimum amount for—

"(i) the initial extension of credit to an account under the plan;

"(ii) any subsequent extension of credit to an account under the plan; or

"(iii) any outstanding balance of an account under the plan.

"(13) STATEMENT REGARDING CONSULTATION OF TAX ADVISOR.—A statement that the consumer should consult a tax advisor regarding the deductibility of interest and charges under the plan.

"(14) DISCLOSURE REQUIREMENTS ESTABLISHED BY BOARD.—Any other term which the Board requires, in regulations, to be disclosed.

"(b) TIME AND FORM OF DISCLOSURES.—

"(1) TIME OF DISCLOSURE.—

"(A) IN GENERAL.—The disclosures required under subsection (a) with respect to any open end consumer credit plan which provides for any extension of credit which is secured by the consumer's principal dwelling and the pamphlet required under subsection (e) shall be provided to any consumer at the time the creditor distributes an application to establish an account under such plan to such consumer.

"(B) TELEPHONE, PUBLICATIONS, AND 3d PARTY APPLICATIONS.—In the case of telephone applications, applications contained in magazines or other publications, or applications provided by a third party, the disclosures required under subsection (a) and the pamphlet required under subsection (e) shall be provided by the creditor before the end of the 3-day period beginning on the date the creditor receives a completed application from a consumer.

"(2) FORM.—

"(A) IN GENERAL.—Except as provided in paragraph (1)(B), the disclosures required under subsection (a) shall be provided on or with any application to establish an account under an open end consumer credit plan which provides for

PUBLIC LAW 100-709—NOV. 23, 1988        102 STAT. 4729

any extension of credit which is secured by the consumer's principal dwelling.

"(B) SEGREGATION OF REQUIRED DISCLOSURES FROM OTHER INFORMATION.—The disclosures required under subsection (a) shall be conspicuously segregated from all other terms, data, or additional information provided in connection with the application, either by grouping the disclosures separately on the application form or by providing the disclosures on a separate form, in accordance with regulations of the Board.

"(C) PRECEDENCE OF CERTAIN INFORMATION.—The disclosures required by paragraphs (5), (6), and (7) of subsection (a) shall precede all of the other required disclosures.

"(D) SPECIAL PROVISION RELATING TO VARIABLE INTEREST RATE INFORMATION.—Whether or not the disclosures required under subsection (a) are provided on the application form, the variable rate information described in subsection (a)(2) may be provided separately from the other information required to be disclosed.

"(3) REQUIREMENT FOR HISTORICAL TABLE.—In preparing the table required under subsection (a)(2)(G), the creditor shall consistently select one rate of interest for each year and the manner of selecting the rate from year to year shall be consistent with the plan.

"(c) 3d PARTY APPLICATIONS.—In the case of an application to open an account under any open end consumer credit plan described in subsection (a) which is provided to a consumer by any person other than the creditor—

"(1) such person shall provide such consumer with—

"(A) the disclosures required under subsection (a) with respect to such plan, in accordance with subsection (b); and

"(B) the pamphlet required under subsection (e); or

"(2) if such person cannot provide specific terms about the plan because specific information about the plan terms is not available, no nonrefundable fee may be imposed in connection with such application before the end of the 3-day period beginning on the date the consumer receives the disclosures required under subsection (a) with respect to the application.

"(d) PRINCIPAL DWELLING DEFINED.—For purposes of this section and sections 137 and 147, the term 'principal dwelling' includes any second or vacation home of the consumer.

"(e) PAMPHLET.—In addition to the disclosures required under subsection (a) with respect to an application to open an account under any open end consumer credit plan described in such subsection, the creditor or other person providing such disclosures to the consumer shall provide—

"(1) a pamphlet published by the Board pursuant to section 4 of the Home Equity Consumer Protection Act of 1988; or

"(2) any pamphlet which provides substantially similar information to the information described in such section, as determined by the Board.".

(b) ADDITIONAL DISCLOSURES WHEN ACCOUNT IS OPENED.—Section 127(a) of the Truth in Lending Act (15 U.S.C. 1637(a)) is amended by adding at the end thereof the following new paragraph:

"(8) In the case of any account under an open end consumer credit plan which provides for any extension of credit which is

102 STAT. 4730          PUBLIC LAW 100-709—NOV. 23, 1988

secured by the consumer's principal dwelling, any information which—

"(A) is required to be disclosed under section 127A(a); and

"(B) the Board determines is not described in any other paragraph of this subsection.".

(c) ADVERTISING REQUIREMENTS.—Chapter 3 of the Truth in Lending Act (15 U.S.C. 1661 et seq.) is amended by adding at the end thereof the following new section:

15 USC 1665b.    "SEC. 147. ADVERTISING OF OPEN END CONSUMER CREDIT PLANS SECURED BY THE CONSUMER'S PRINCIPAL DWELLING.

"(a) IN GENERAL.—If any advertisement to aid, promote, or assist, directly or indirectly, the extension of consumer credit through an open end consumer credit plan under which extensions of credit are secured by the consumer's principal dwelling states, affirmatively or negatively, any of the specific terms of the plan, including any periodic payment amount required under such plan, such advertisement shall also clearly and conspicuously set forth the following information, in such form and manner as the Board may require:

"(1) LOAN FEES AND OPENING COST ESTIMATES.—Any loan fee the amount of which is determined as a percentage of the credit limit applicable to an account under the plan and an estimate of the aggregate amount of other fees for opening the account, based on the creditor's experience with the plan and stated as a single amount or as a reasonable range.

"(2) PERIODIC RATES.—In any case in which periodic rates may be used to compute the finance charge, the periodic rates expressed as an annual percentage rate.

"(3) HIGHEST ANNUAL PERCENTAGE RATE.—The highest annual percentage rate which may be imposed under the plan.

"(4) OTHER INFORMATION.—Any other information the Board may by regulation require.

"(b) TAX DEDUCTIBILITY.—If any advertisement described in subsection (a) contains a statement that any interest expense incurred with respect to the plan is or may be tax deductible, the advertisement shall not be misleading with respect to such deductibility.

"(c) CERTAIN TERMS PROHIBITED.—No advertisement described in subsection (a) with respect to any home equity account may refer to such loan as 'free money' or use other terms determined by the Board by regulation to be misleading.

"(d) DISCOUNTED INITIAL RATE.—

"(1) IN GENERAL.—If any advertisement described in subsection (a) includes an initial annual percentage rate that is not determined by the index or formula used to make later interest rate adjustments, the advertisement shall also state with equal prominence the current annual percentage rate that would have been applied using the index or formula if such initial rate had not been offered.

"(2) QUOTED RATE MUST BE REASONABLY CURRENT.—The annual percentage rate required to be disclosed under the paragraph (1) rate must be current as of a reasonable time given the media involved.

"(3) PERIOD DURING WHICH INITIAL RATE IS IN EFFECT.—Any advertisement to which paragraph (1) applies shall also state the period of time during which the initial annual percentage rate referred to in such paragraph will be in effect.

128

PUBLIC LAW 100–709—NOV. 23, 1988          102 STAT. 4731

"(e) BALLOON PAYMENT.—If any advertisement described in subsection (a) contains a statement regarding the minimum monthly payment under the plan, the advertisement shall also disclose, if applicable, the fact that the plan includes a balloon payment.

"(f) BALLOON PAYMENT DEFINED.—For purposes of this section and section 127A, the term 'balloon payment' means, with respect to any open end consumer credit plan under which extensions of credit are secured by the consumer's principal dwelling, any repayment option under which—

"(1) the account holder is required to repay the entire amount of any outstanding balance as of a specified date or at the end of a specified period of time, as determined in accordance with the terms of the agreement pursuant to which such credit is extended; and

"(2) the aggregate amount of the minimum periodic payments required would not fully amortize such outstanding balance by such date or at the end of such period."

(d) TECHNICAL AND CONFORMING AMENDMENTS.—Section 122(b) of the Truth in Lending Act (15 U.S.C. 1632(b)) is amended by striking out "section 128(b)(1)" and inserting in lieu thereof "sections 127A(b)(3) and 128(b)(1)".

SEC. 3. HOME EQUITY PROTECTIONS.

Chapter 2 of the Truth in Lending Act (15 U.S.C. 1631 et seq.) is amended by adding at the end thereof the following new section:

"SEC. 137. HOME EQUITY PLANS.                                    15 USC 1647.

"(a) INDEX REQUIREMENT.—In the case of extensions of credit under an open end consumer credit plan which are subject to a variable rate and are secured by a consumer's principal dwelling, the index or other rate of interest to which changes in the annual percentage rate are related shall be based on an index or rate of interest which is publicly available and is not under the control of the creditor.

"(b) GROUNDS FOR ACCELERATION OF OUTSTANDING BALANCE.—A creditor may not unilaterally terminate any account under an open end consumer credit plan under which extensions of credit are secured by a consumer's principal dwelling and require the immediate repayment of any outstanding balance at such time, except in the case of—

"(1) fraud or material misrepresentation on the part of the consumer in connection with the account;

"(2) failure by the consumer to meet the repayment terms of the agreement for any outstanding balance; or

"(3) any other action or failure to act by the consumer which adversely affects the creditor's security for the account or any right of the creditor in such security.

"(c) CHANGE IN TERMS.—

"(1) IN GENERAL.—No open end consumer credit plan under which extensions of credit are secured by a consumer's principal dwelling may contain a provision which permits a creditor to change unilaterally any term required to be disclosed under section 127A(a) or any other term, except a change in insignificant terms such as the address of the creditor for billing purposes.

129

"(2) CERTAIN CHANGES NOT PRECLUDED.—Notwithstanding the provisions of subsection (1), a creditor may make any of the following changes:

"(A) Change the index and margin applicable to extensions of credit under such plan if the index used by the creditor is no longer available and the substitute index and margin would result in a substantially similar interest rate.

"(B) Prohibit additional extensions of credit or reduce the credit limit applicable to an account under the plan during any period in which the value of the consumer's principal dwelling which secures any outstanding balance is significantly less than the original appraisal value of the dwelling.

"(C) Prohibit additional extensions of credit or reduce the credit limit applicable to the account during any period in which the creditor has reason to believe that the consumer will be unable to comply with the repayment requirements of the account due to a material change in the consumer's financial circumstances.

"(D) Prohibit additional extensions of credit or reduce the credit limit applicable to the account during any period in which the consumer is in default with respect to any material obligation of the consumer under the agreement.

"(E) Prohibit additional extensions of credit or reduce the credit limit applicable to the account during any period in which—

"(i) the creditor is precluded by government action from imposing the annual percentage rate provided for in the account agreement; or

"(ii) any government action is in effect which adversely affects the priority of the creditor's security interest in the account to the extent that the value of the creditor's secured interest in the property is less than 120 percent of the amount of the credit limit applicable to the account.

"(F) Any change that will benefit the consumer.

"(3) MATERIAL OBLIGATIONS.—Upon the request of the consumer and at the time an agreement is entered into by a consumer to open an account under an open end consumer credit plan under which extensions of credit are secured by the consumer's principal dwelling, the consumer shall be given a list of the categories of contract obligations which are deemed by the creditor to be material obligations of the consumer under the agreement for purposes of paragraph (2)(D).

"(4) CONSUMER BENEFIT.—

"(A) IN GENERAL.—For purposes of paragraph (2)(F), a change shall be deemed to benefit the consumer if the change is unequivocally beneficial to the borrower and the change is beneficial through the entire term of the agreement.

"(B) BOARD CATEGORIZATION.—The Board may, by regulation, determine categories of changes that benefit the consumer.

"(d) TERMS CHANGED AFTER APPLICATION.—If any term or condition described in section 127A(a) which is disclosed to a consumer in connection with an application to open an account under an open end consumer credit plan described in such section (other than a

130

variable feature of the plan) changes before the account is opened, and if, as a result of such change, the consumer elects not to enter into the plan agreement, the creditor shall refund all fees paid by the consumer in connection with such application.

"(e) ADDITIONAL REQUIREMENTS RELATING TO REFUNDS AND IMPOSITION OF NONREFUNDABLE FEES.—

"(1) IN GENERAL.—No nonrefundable fee may be imposed by a creditor or any other person in connection with any application by a consumer to establish an account under any open end consumer credit plan which provides for extensions of credit which are secured by a consumer's principal dwelling before the end of the 3-day period beginning on the date such consumer receives the disclosure required under section 127A(a) and the pamphlet required under section 127A(e) with respect to such application.

"(2) CONSTRUCTIVE RECEIPT.—For purposes of determining when a nonrefundable fee may be imposed in accordance with this subsection if the disclosures and pamphlet referred to in paragraph (1) are mailed to the consumer, the date of the receipt of the disclosures by such consumer shall be deemed to be 3 business days after the date of mailing by the creditor.".

## SEC. 4. CONSUMER EDUCATION.

15 USC 1637a note.

The Board of Governors of the Federal Reserve System shall develop and prepare a pamphlet for distribution to consumers which contains—

(1) a general description of open end consumer credit plans secured by the consumer's principal dwelling and the terms and conditions under which such loans are generally extended; and

(2) a discussion of the potential advantages and disadvantages of such plans, including how to compare among home equity plans and between home equity and closed end credit plans.

## SEC. 5. CLERICAL AMENDMENTS.

(a) CHAPTER 2.—The table of sections for chapter 2 of the Truth in Lending Act is amended—

(1) by inserting after the item relating to section 127 the following new item:

"127A. Disclosure requirements for open end consumer credit plans secured by the
    consumer's principal dwelling."; 

and

(2) by inserting after the item relating to section 136 the following new item:

"137. Home equity plans.".

(b) CHAPTER 3.—The table of sections for chapter 3 of the Truth in Lending Act is amended by inserting after the item relating to section 146 the following new item:

"147. Advertising of open end consumer credit plans secured by the consumer's
    principal dwelling.".

## SEC. 6. ABILITY TO COMPARE PLANS.

(a) STUDY REQUIRED.—Before the end of the 6-month period beginning on the date of the enactment of this Act, the Board of Governors of the Federal Reserve System shall conduct a study to determine whether the use of the same term, such as annual percentage rate, to describe the cost to the consumer for extensions

of credit under all forms of consumer credit plans may unduly mislead consumers with respect to the comparability of the various forms of such extensions of credit.

(b) REPORT REQUIRED.—At the conclusion of the study required under subsection (a), the Board of Governors of the Federal Reserve System shall submit a report to the Congress containing the Board's findings and conclusions in connection with such study and, if applicable, such recommendations for legislation or administrative action as the Board may determine to be appropriate, including, if appropriate, a new term to replace "annual percentage rate" or "corresponding nominal percentage rate".

15 USC 1637a note.

## SEC. 7. REGULATIONS AND EFFECTIVE DATE.

(a) REGULATIONS.—Before the end of the 60-day period beginning on the date of the enactment of this Act, the Board of Governors of the Federal Reserve System shall prescribe such regulations as may be necessary to carry out the proposes of the amendments made by this Act.

(b) EFFECTIVE DATE.—The amendments made by this Act, and the regulations prescribed pursuant to subsection (a) with respect to such amendments, shall apply to—

(1) any agreement to open an account under an open end consumer credit plan under which extensions of credit are secured by a consumer's principal dwelling which is entered into after the end of the 5-month period beginning on the date on which the regulations prescribed under subsection (a) become final; and

(2) any application to open such an account which is distributed by, or received by a creditor, after the end of such 5-month period.

(c) VOLUNTARY COMPLIANCE.—Notwithstanding subsection (b), any creditor may comply with the amendments made by this Act, in accordance with the regulations prescribed by the Board, before the effective date established under such subsection.

Approved November 23, 1988.

LEGISLATIVE HISTORY- H.R 3011:

CONGRESSIONAL RECORD, Vol. 134 (1988):
      June 20, considered and passed House.
      Oct. 21, considered and passed Senate.

○

133

Exhibit 14

1601461348 1
acct

apN-209-31259
Aquistion 16-10-06
Doc # 2006 0608808 / 687- Joint tenacy added (unknown)

Pay Ledger 2008
American Home acct 3140 8362
Mortgage Servicing D.I.P

✓ 12 - 31 - 08  WU pd  1081.77 ✓  telephone paymnt  Confirm 91 618940

10 - 5 - 08  pd cck # 423012739 ✓

N - 4 - 08  CK # 3691 . pd 1056.03

9 - 12 - 08 pd 1005.74 speed pay 1022.69  TBR.
9 - 12 - 08 pd pd 1231.85 Beg AHMS7. stmt.
8 - 8 - 08 speed pd W - 10 22.69 ✓

X 7 - 8 - 08  pd  1141.05   BofA Acct ✓ stmt 07-29-08
X 7 - 5 - 08  pd  1005.74 w cck # 421448844 ✓
6 - 9 - 08  pd  1005.74  BofA cck # 421448354

5 - 13 - 08  pd  1015.69 BofA acct ✓
5 - 12 - 08  pd  $1005.00  pd thru western union  confirm 875-228
4 - 4 - 08  pd  1015.95 BofA acct

3
02 - 08 - 08  pd 1000 - ck # 3229 Chase
2 - 11 - 08  CK.pd  1005.74 RE: bofA ck acct ledger
2 - 26 - 08  pd 1008 - prem acct HK 44332 5086 ✓
1 - 20 - 2008  pd 1008.00  HK 43974 82069
1 - 15 - 08  pd  1015.69 cheek by telephone
Confirmation 1 credit

134
295
873

missing

NOV 08

11-4-08
CK# 3691
pd 1056.03

135





AMERICAN HOME MORTGAGE
**INC**
*Servicing*
*at a higher power*

P.O. Box 631730
Irving, TX 75063-1730

**Customer Care Department 1-877-304-3100**
7:00AM - 9:00PM CST Monday through Friday
7:00AM - 1:00PM CST Saturday
Website: www.ahmsi3.com

011674/        PI    RE

GLENDA R MURPHY
ERIC M MURPHY
7069 ISLE CT
RCH CUCAMONGA   CA  91739-1691

*pd + mail*
*10|4|0*

## MONTHLY BILLING STATEMENT

| Item Description | |
|---|---|
| Statement Date | 09/12/08 |
| Payment Due Date | 10/01/08 |
| Loan Number | 0031408362 |
| **Item Description** | **Amount** |
| Principal Balance | $406,237.16 |
| Escrow Balance | $ .00 |
| Unpaid Late Charges | $ .00 |
| Interest Rate | 6.406% |
| **Year To Date** | |
| Interest – Paid | $22,608.73 |
| Interest – Deferred* | $13,506.52 |
| Taxes | $ .00 |

\* Deferred interest will be applied
to the outstanding principal balance
of the loan.

**Property Address:**   9965 MCKINLEY ST
RANCHO CUCAMONGA  CA  91730

## IMPORTANT MESSAGES

American Home Mortgage Servicing Inc. has made it easier than ever to view and access account information through many of our self service options. Log onto www.ahms13.com to learn more on how to make payments online, order payoff statements, access your loan history and much more! Our secure website is available for your convenience 24 hours a day.

## TRANSACTIONS SINCE LAST STATEMENT

| Date | Description | Principal | Interest | Escrow | Misc. | Late/Other Charges | Total |
|---|---|---|---|---|---|---|---|
| 09/12 | PAYMENT REC'D | $1,231.85- | $2,237.59 | | | | $1,005.74 |
| 09/12 | ADD'L PRINCIPAL | $50.29 | | | | | $50.29 |

## SPECIAL MESSAGES

**1 – Minimum Payment**
This is the minimum amount that must be paid. Paying this "minimum" payment amount may not be enough to pay all of the monthly interest due. If this occurs, the remaining unpaid interest is then added to your principal balance and will change the total amount owed on your mortgage.

| Factors | Amount |
|---|---|
| Principal & Interest | $1,005.74 |
| Escrow | $ .00 |
| Optional Products | $ .00 |
| Other | $ .00 |
| Payment Amount Due | $1,005.74 |
| Past Due Payments | $ .00 |
| Total Payment Due | $1,005.74 |
| Unpaid Late Charges | |
| NSF/Other Fees | $ .00 |
| Total Amount Due | $1,005.74 |

**3 – Fully Amortized Payment**
This is the traditional payment of principal and interest in an amount calculated to pay the entire principal balance at the current interest rate over the remaining term of your loan. This payment reduces the amount owed on your mortgage. Please note this payment amount will change monthly based on what you paid for your prior payment.

| Factors | Amount |
|---|---|
| Principal & Interest | $2,376.05 |
| Escrow | $ .00 |
| Optional Products | $ .00 |
| Other | $ .00 |
| Payment Amount Due | $2,376.05 |
| Past Due Payments | $ .00 |
| Total Payment Due | $2,376.05 |
| Unpaid Late Charges | |
| NSF/Other Fees | $ .00 |
| Total Amount Due | $2,376.05 |

**2 – Interest Only Payment**
This is a payment of only the actual amount of interest due for the month at the current note rate. This payment option is only available if the amount of interest due is equal to or greater than the minimum payment amount. Since no funds are included for application to the principal loan balance, this payment does not reduce the total amount owed on your mortgage. Please note this payment amount will change monthly based on what you paid

| Factors | Amount |
|---|---|
| Principal & Interest | $2,168.63 |
| Escrow | $ .00 |
| Optional Products | $ .00 |
| Other | $ .00 |
| Payment Amount Due | $2,168.63 |
| Past Due Payments | $ .00 |
| Total Payment Due | $2,168.63 |
| Unpaid Late Charges | |
| NSF/Other Fees | $ .00 |
| Total Amount Due | $2,168.63 |

**4 – 15 Year Amortized Payment**
This is the traditional payment of principal and interest in an amount calculated to pay the entire principal balance at the current interest rate over a 15 year period. This payment reduces the amount owed on your mortgage. Please note this payment amount will change monthly based on what you paid for your prior payment

| Factors | Amount |
|---|---|
| Principal & Interest | $3,812.55 |
| Escrow | $ .00 |
| Optional Products | $ .00 |
| Other | $ .00 |
| Payment Amount Due | $3,812.55 |
| Past Due Payments | $ .00 |
| Total Payment Due | $3,812.55 |
| Unpaid Late Charges | |
| NSF/Other Fees | $ .00 |
| Total Amount Due | $3,812.55 |

*July 04* (handwritten)

**GLENDA R MURPHY**
**ERIC MURPHY**

Statement Date: July 29, 2008

H_

## ☐ Branch/ATM Deposits

| Number | Date Posted | Amount | | Number | Date Posted | Amount |
|---|---|---|---|---|---|---|
| | 07/02 | $ 2,644.00 | | | 07/15 | 3,740.00 |
| | 07/03 | 1,477.00 | | | 07/22 | 600.00 |
| | 07/03 | 4,800.00 | | | 07/23 | 550.00 |
| | 07/07 | 1,998.53 | | | 07/25 | 400.00 |
| | 07/14 | 100.00 | | **Total of 9 deposits** | | **$16,309.53** |

## ☐ Checks Paid          * Gap in sequential check numbers.

| Date Paid | Number | Amount | | Date Paid | Number | Amount |
|---|---|---|---|---|---|---|
| 07/07 | | $ 6,584.36 | | 07/07 | * 3799 | 129.38 |
| 07/08 | * | 1,141.05 | | 07/10 | 3800 | 25.00 |
| 07/15 | * | 3,227.63 | | 07/11 | * 4012 | 24.00 |
| 07/29 | * | 205.00 | | 07/14 | 4013 | 259.00 |
| 07/08 | * 3789 | 77.93 | | 07/18 | * 4015 | 363.34 |
| 07/08 | 3790 | 50.00 | | 07/25 | * 4017 | 25.00 |
| 07/08 | 3791 | 200.00 | | 07/25 | 4018 | 100.00 |
| 07/08 | 3792 | 111.00 | | 07/29 | * 4021 | 100.00 |
| 07/09 | 3793 | 177.75 | | 07/29 | 4022 | 25.00 |
| 07/09 | 3794 | 551.33 | | 07/07 | * 4054 | 120.00 |
| 07/07 | * 3796 | 208.00 | | **Total of 22 Checks Paid** | | **$13,904.77** |
| 07/08 | 3797 | 200.00 | | | | |

## ☐ Account Activity

| Date Posted | Description | Reference Number | Amount |
|---|---|---|---|
| | **Deposits and Credits** | | |
| 07/07 | NSF/OD Fee Refund Fdes Nmo 0006576 Nbk4efs | | $175.00 |
| | **Withdrawals, Transfers and Account Fees** | | |
| 07/03 | American Express DES:WEB Remit ID:080703051032289 INDN:Glenda Murphy    Co ID:1133133497 WEB Ref:008185010963051 | | $200.00 |
| 07/07 | Purchase on 07/03 (Card #414648311),<br>    Food 4 Less . Rancho Cuca CA | 007528 | 45.78 |
| 07/07 | Purchase on 07/03 (Card #414648311),<br>    Costco Whse #0 Rancho Cucamo CA | 000704 | 123.93 |
| 07/07 | Cash withdrawal on 07/04,<br>    Bank of America ATM #ICAD0199 (Card #358222933) | 007019 | 200.00 |
| 07/08 | Dell Financial  DES:Check Pymt Check #:3795<br>INDN:687945011901585 4878    Co ID:1742825829 ARC<br>Ref:008189009185792 | | |
| 07/08 | Purchase on 07/08 (Card #414648311),<br>    99 Cents Only Rancho Cucamo CA | 001178 | 37.00 |
| 07/08 | Purchase on 07/08 (Card #414648311),<br>    Ralphs Cho Cucamonga CA | 005206 | 43.34 |
| 07/11 | Check Card Purchase on 07/08 (Card #414648311),<br>    Dish Network-One Time 800-333-3474 CO<br>    Ref #2461043819200403 0231314 | | 45.87 |
| 07/11 | Purchase on 07/10 (Card #358222933),<br>    Shell Service Ontario CA | 832600 | 20.00 |
| 07/14 | Purchase on 07/12 (Card #414648311),<br>    Stater Bros #5 Alta Loma CA | 053126 | 20.02 |
| 07/14 | Check Card Purchase on 07/12 (Card #414648311),<br>    Arbys 7022 Rancho Cucamo CA<br>    Ref #2401339819400260 7695686 | | 2.65 |
| 07/14 | Sears Payment  DES:Check Pymt Check #:4011 INDN:6eb0cf1aff4809e8<br>Co ID:Citi Sears ARC Ref:008196007725603 | | 15.23 |
| 07/16 | Cash withdrawal on 07/16,<br>    Bank of America ATM #ICAD4818 (Card #358222933) | 004949 | 42.00 |
| 07/18 | Purchase on 07/18 (Card #414648311),<br>    Wal Wal-Mart S Rancho Cucamo CA | 362738 | 100.00 |
| | | | 45.76 |

Continued on next page

California





**Bank of America** 〰

GLENDA R MURPHY
ERIC MURPHY

*508*

H_

Statement Date: May 28, 2008

☐ **Account Activity**  Continued

| Date Posted | Description | Reference Number | Amount |
|---|---|---|---|
| | **Withdrawals, Transfers and Account Fees** | | |
| 05/05 | Purchase on 05/02 (Card #383831054), Staples, Inc. Fontana CA | | 8.07 |
| 05/05 | Check Card Purchase on 05/02 (Card #358222933), Nu Upland Car Wash Upland CA Ref #2432301812325012301 0287 | 043326 | 11.99 |
| 05/05 | Check Card Purchase on 05/02 (Card #383831054), El Torito #7249 Rancho Cucamo CA Ref #2432301812458033804 1484 | | 18.63 |
| 05/05 | Cash withdrawal on 05/04, Bank of America ATM #SCAD1360 (Card #358222933) CA Tlr cash withdrawal from Chk 0023 Banking Ctr No Upland #0000750 CA Confirmation# 9832939212 | 004015 | 20.00 |
| 05/05 | Check Card Purchase on 05/02 (Card #383831054), Chevron 00211889 Fontana CA Ref #2482512812448103980 3072 | | 60.00 |
| 05/05 | Purchase on 05/02 (Card #383831054), Stater Bros #175 Fontana CA | | 75.00 |
| 05/05 | CA Tlr cash withdrawal from Chk 0023 Banking Ctr Victoria #0002971 CA Confirmation# 0012116088 | 175541 | 97.52 |
| 05/06 | Cash withdrawal on 05/05, Bank of America ATM #ICAD7386 (Card #358222933) | | 300.00 |
| 05/06 | Check Card Purchase on 05/05 (Card #358222933), Mercury insurance 888-637-2176 CA Ref #2489216812600091296 9976 | 003485 | 20.00 |
| 05/07 | Cash withdrawal on 05/07, Bank of America ATM #ICAD0199 (Card #358222933) | | 555.84 |
| 05/08 | Cash withdrawal on 05/08, Non-Bank of America ATM #I260M643 (Card #358222933) | 006359 | 20.00 |
| 05/08 | ATM withdrawal fee on 05/08, Non-Bank of America ATM #I260M643 (Card #358222933) | 000377201 | 11.50 |
| 05/09 | Cash withdrawal on 05/09, Bank of America ATM #ICAD4818 (Card #358222933) | 000377201 | 2.00 |
| 05/12 | Cash withdrawal on 05/10, Bank of America ATM #ICAD7386 (Card #358222933) | 002086 | 40.00 |
| 05/12 | Sears Payment  DES:Check Pymt Check #:3764 INDN:6eb0cf1aff4809e8 Co ID:Citi Sears ARC Ref:00813300234785 7 | 005147 | 20.00 |
| 05/12 | Cash withdrawal on 05/10, Bank of America ATM #ICAD0199 (Card #358222933) | | 25.00 |
| 05/13 | Purchase on 05/12 (Card #358222933), 99 Cents Only Rancho Cucamo CA | 007585 | 300.00 |
| 05/13 | Hfc ARC Pmnt   DES:Checkpaymt Check #:3774 INDN:0217300201406017080510  Co ID:3000000025 ARC Ref:00813300497678 8 | 007749 | 67.97 |
| 05/13 | Ahmemortgepay DES:Finance   ID:1001461348 INDN:Glenda Murphy Co ID:2005040003 TEL Ref:00813300681589 9 | | 389.00 |
| 05/14 | Check Card Purchase on 05/12 (Card #358222933), Chevron 00099956 Cucamonga (ra CA Ref #2462512813448112403 7776 | | 1015.69 |
| 05/15 | Cash withdrawal on 05/14, Bank of America ATM #SCAD7862 (Card #358222933) | | 63.97 |
| 05/19 | Check Card Purchase on 05/15 (Card #358222933), Shell Oil 57442740700 Fontana CA Ref #2431605813754881604 5788 | 003704 | 20.00 |
| 05/23 | Overdraft Item Fee | | 1.39 |
| 05/23 | Return Item Chargeback | | 35.00 |
| 05/23 | Amer.Gen.Life-05 DES:  Ins Prem ID:Mm0141713 INDN:Murphy,Glenda C Co ID:1390551540 PPD Ref:00814301175853 7 | | 400.00 |
| 05/27 | Check Card Purchase on 05/25 (Card #358222933), Village Car Wash Pomona CA Ref #2422444381470200086836 49 | | 35.00 |
| 05/27 | Purchase on 05/24 (Card #414648311), 99 Cents Only Rancho Cucamo CA | | 6.99 |
| 05/27 | Om Financial     DES:Insur Prem ID:P 061a000276 INDN:Murphy, Glenda R   Co ID:1526033321 PPD Ref:00814800632332 0 | 008580 | 19.81 |
| | | | 25.53 |

Continued on next page
0037867.003.T21.1

California

*141*    *303*

# Bank of America

*4-08*

GLENDA R MURPHY
ERIC MURPHY

Statement Date: April 28, 2008

H

## Account Activity  Continued

| Date Posted | Description | Reference Number | Amount |
|---|---|---|---|
| | **Withdrawals, Transfers and Account Fees** | | |
| 03/31 | Purchase on 03/29 (Card #383831054), Sou Ross Stores # Rnh Cucamonga CA | 881022 | 14.00 |
| 03/31 | Cash withdrawal on 03/31, Bank of America ATM #SCAD1360 (Card #383831054) | 001367 | 40.00 |
| 03/31 | Purchase on 03/31 (Card #383831054), 99 Cent Store 984 Rancho Cucamo CA | 226343 | 43.57 |
| 03/31 | Purchase on 03/31 (Card #383831054), Albertsons Rancho Cucamo CA | 518015 | 61.36 |
| 03/31 | Purchase on 03/29 (Card #383831054), The Alley 4 Rancho Cucamo CA | 783191 | 72.15 |
| 04/01 | Cash withdrawal on 03/28, Bank of America ATM #ICAD0200 (Card #383831054) | 005898 | 200.00 |
| 04/01 | Check Card Purchase on 03/31 (Card #358222933), Logans Roadhouse Fontan Fontana CA Ref #24013398091020875262076 | | 18.34 |
| 04/01 | Purchase on 04/01 (Card #383831054), Homegoods Home Go Rancho Cucamo CA | 035947 | 26.93 |
| 04/01 | Purchase on 04/01 (Card #383831054), Petsmart Rancho Cucamo CA | 487835 | 39.88 |
| 04/01 | Check Card Purchase on 03/30 (Card #358222933), USA Petroleum #0847 Fontana CA Ref #24781978091559090040412 | | 41.01 |
| 04/02 | Check Card Purchase on 03/31 (Card #383831054), Chevron 00099956 Cucamonga (ra CA Ref #24625128091480749846141 | | 64.60 |
| 04/02 | Check Card Purchase on 03/31 (Card #358222933), Shell Oil 57442740700 Fontana CA Ref #24316058092548571012545 | | 1.39 |
| 04/02 | Check Card Purchase on 03/31 (Card #358222933), Shell Oil 57442773909 San Bernardin CA Ref #24316058092548571034663 | | 25.00 |
| 04/02 | CA Tlr cash withdrawal from Chk 0023 Banking Ctr Victoria #0002971 CA Confirmation# 7174250737 | | 100.00 |
| 04/03 | Purchase on 04/02 (Card #358222933), AT&T ATM Qd PA Alpharetta GA | 881900 | 190.81 |
| 04/03 | Check Card Purchase on 04/01 (Card #358222933), Shell Oil 57442773909 San Bernardin CA Ref #24316058093548587013452 | | 22.00 |
| 04/03 | Check Card Purchase on 04/02 (Card #358222933), Union 76 10027720 Rancho Cucamo CA Ref #24164078093819847219635 | | 25.02 |
| 04/03 | Check Card Purchase on 04/01 (Card #383831054), Islamorada Fish Co Rancho Cucamo CA Ref #24412958093286588900583 | | 67.23 |
| 04/03 | Purchase on 04/02 (Card #383831054), Stater Bros #175 Fontana CA | 175317 | 88.12 |
| 04/04 | CA Tlr cash withdrawal from Chk 0023 Banking Ctr North Fontana #0002746 CA Confirmation# 7245428531 | | 500.00 |
| 04/04 | Cash withdrawal on 04/04, Bank of America ATM #WCAD6938 (Card #358222933) | 008899 | 20.00 |
| 04/04 | Verizon West ARC DES:Verizonca Check #4032 INDN:0125201139015428 Co ID:1005022230 ARC Ref:008094009990043 | | 50.67 |
| 04/04 | Purchase on 04/03 (Card #383831054), Ralphs 14574 Base Fontana CA | 481728 | 53.96 |
| 04/07 | Ameramortappay DES:Finance ID:1001481348 INDN:Glenda Murphy Co ID:2005040002 PPD Ref:00809400924782... | | 1016.95 |
| 04/07 | Purchase on 04/05 (Card #358222933), Wildoats Rancho Cucamo CA | 672511 | 4.99 |
| 04/07 | Purchase on 04/05 (Card #358222933), Nnt Abc Pharma Upland CA | 009003 | 5.00 |
| 04/07 | Purchase on 04/05 (Card #358222933), 99 Cent Store Upland CA | 005852 | 7.01 |
| 04/07 | Check Card Purchase on 04/06 (Card #358222933), Dalia s Pizza Alta Loma 9099801482 CA Ref #24493988097207838800430 | | 7.52 |

Missing March 08

note
2 payments
made in
July 2008
7-5-08  1141.05 personal ck
7-5-08  1005.74 cek

143

2-11-08

HL

GLENDA R MURPHY
ERIC MURPHY

Statement Date: February 27, 2008

□ **Important Information About Your Account**

A monthly service charge was applied to your Prima account because your balance was below the minimum combined balance of $10,000. You can avoid this charge by keeping the required minimum combined balance in this account and the Bank of America savings plans you've linked to it.

Total interest paid to your account in 2007 : $7.83

□ **Branch/ATM Deposits**

| Number | Date Posted | Amount | | Number | Date Posted | Amount |
|---|---|---|---|---|---|---|
| | 02/01 | $ 4,121.00 | | | 02/22 | 599.28 |
| | 02/07 | 1,195.19 | | | 02/25 | 57.75 |
| | 02/11 | 500.00 | | Total of 5 deposits | | $6,413.22 |

□ **Checks Paid**

\* Gap in sequential check numbers.

| Date Paid | Number | Amount | | Date Paid | Number | Amount |
|---|---|---|---|---|---|---|
| 02/07 | | $ 63.04 | | 02/05 | 3744 | 210.00 |
| 02/11 | \* | 2,915.83 | | 02/05 | 3745 | 233.00 |
| 02/08 | \* 3229 | 1,000.00 | | 02/06 | 3746 | 50.00 |
| 02/11 | 3230 | 45.00 | | 02/07 | 3747 | 8.40 |
| 02/15 | 3231 | 50.00 | | 02/08 | 3748 | 147.00 |
| 02/14 | 3232 | 100.00 | | 02/08 | 3749 | 210.12 |
| 02/19 | 3233 | 83.35 | | 02/08 | 3750 | 210.81 |
| 02/26 | \* 3236 | 75.00 | | 02/08 | 3751 | 96.63 |
| 02/27 | \* 3240 | 280.00 | | 02/11 | 3752 | 240.00 |
| 02/11 | \* 3649 | 200.00 | | 02/11 | 3753 | |
| 02/07 | \* 3742 | 62.00 | | 02/08 | 3754 | 125.00 |
| 02/05 | 3743 | 55.00 | | Total of 23 Checks Paid | | $7,345.72 |

□ **Account Activity**

| Date Posted | Description | Reference Number | Amount |
|---|---|---|---|
| | **Deposits and Credits** | | |
| 01/31 | ATM deposit on 01/31, | | |
| | Bank of America ATM #SCAD5982 (Card #383831054) | 004502 | $1,000.00 |
| 02/04 | ATM deposit on 02/03, | | |
| | Bank of America ATM #SCAD5990 (Card #358222933) | 005807 | 2,000.00 |
| 02/19 | ATM deposit on 02/18, | | |
| | Bank of America ATM #ICAD0200 (Card #383831054) | 004520 | 1,160.00 |
| 02/26 | ATM deposit on 02/26, | | |
| | Bank of America ATM #SCAD1403 (Card #358222933) | 005535 | 209.03 |
| | **Total Deposits and Credits** | | $4,369.03 |
| | **Withdrawals, Transfers and Account Fees** | | |
| 01/30 | Cash withdrawal on 01/30, | | |
| | Bank of America ATM #WCAD2895 (Card #358222933) | | $20.00 |
| 01/30 | Purchase on 01/29 (Card #383831054), | | |
| | Wal-Mart #1922 Rancho Cucam CA | 003297 | 50.76 |
| 01/31 | CA Tir cash withdrawal from Chk 0023 Banking Ctr North Fontana | | |
| | #0002746 CA Confirmation# 1807824831 | 058437 | |
| 02/01 | Purchase on 01/31 (Card #383831054), | | |
| | Costco Whse #0087 Rancho Cucamo CA | 225556 | 100.00 |
| 02/01 | Purchase on 01/31 (Card #383831054), | | |
| | Costco Gas #00878 Rancho Cucamo CA | 354601 | 48.18 |
| 02/01 | Bk Of AM Crd ACH DES:Paybyphone ID:01017152 | | 49.99 |
| | INDN:5329082344130895000000 Co ID:3001190310 PPD | | |
| | Ref:008032010170128 | | |
| | | | 56.00 |

Continued on next page
0037492.002.T21.1

California

144

Page 2 of 8

*02-08-08 Payment $1000.00*
*Ck # 3229*

**GLENDA R MURPHY**
**ERIC MURPHY**

HL

Statement Date: February 27, 2008

☐ **Important Information About Your Account**

A monthly service charge was applied to your Prima account because your balance was below the minimum combined balance of $10,000. You can avoid this charge by keeping the required minimum combined balance in this account and the Bank of America savings plans you've linked to it.

Total interest paid to your account in 2007 : $7.83

☐ **Branch/ATM Deposits**

| Number | Date Posted | Amount | | Number | Date Posted | Amount |
|---|---|---|---|---|---|---|
| | 02/01 | $ 4,121.00 | | | 02/22 | 599.28 |
| | 02/07 | 1,135.19 | | | 02/25 | 57.75 |
| | 02/11 | 500.00 | Total of 5 deposits | | | $6,413.22 |

☐ **Checks Paid**      * Gap in sequential check numbers.

| Date Paid | Number | Amount | | Date Paid | Number | Amount |
|---|---|---|---|---|---|---|
| 02/07 | | $ 63.04 | | 02/05 | 3744 | 210.00 |
| 02/11 | * | 2,815.63 | | 02/05 | 3745 | 233.00 |
| 02/08 | * 3229 | 1,000.00 | | 02/08 | 3746 | 50.00 |
| 02/11 | 3230 | 45.00 | | 02/07 | 3747 | 8.40 |
| 02/15 | 3231 | 50.00 | | 02/08 | 3748 | 147.00 |
| 02/14 | 3232 | 100.00 | | 02/08 | 3749 | 210.12 |
| 02/19 | 3233 | 63.35 | | 02/08 | 3750 | 210.81 |
| 02/26 | * 3236 | 75.00 | | 02/08 | 3751 | 96.83 |
| 02/27 | 3240 | 280.00 | | 02/07 | 3752 | 240.00 |
| 02/11 | * 3649 | 200.00 | | 02/11 | 3753 | 1,005.74 |
| 02/07 | 3742 | 62.00 | | 02/08 | 3754 | 125.00 |
| 02/05 | 3743 | 55.00 | Total of 23 Checks Paid | | | $7,345.72 |

☐ **Account Activity**

| Date Posted | Description | Reference Number | Amount |
|---|---|---|---|
| | **Deposits and Credits** | | |
| 01/31 | ATM deposit on 01/31, | | |
| | Bank of America ATM #SCAD5982 (Card #383831054) | 004502 | $1,000.00 |
| 02/04 | ATM deposit on 02/03, | | |
| | Bank of America ATM #SCAD5990 (Card #358222933) | 005807 | 2,000.00 |
| 02/19 | ATM deposit on 02/18, | | |
| | Bank of America ATM #ICAD0200 (Card #383831054) | 004520 | 1,160.00 |
| 02/26 | ATM deposit on 02/26, | | |
| | Bank of America ATM #SCAD1403 (Card #358222933) | 005535 | 209.03 |
| | **Total Deposits and Credits** | | **$4,369.03** |
| | **Withdrawals, Transfers and Account Fees** | | |
| 01/30 | Cash withdrawal on 01/30, | | |
| | Bank of America ATM #WCAD2895 (Card #358222933) | 003267 | $20.00 |
| 01/30 | Purchase on 01/29 (Card #383831054), | | |
| | Wal-Mart #1922 Rancho Cucam CA | 058437 | 50.76 |
| 01/31 | CA Tlr cash withdrawal from Chk 0023 Banking Ctr North Fontana #0002746 CA Confirmation# 1807824831 | | |
| 02/01 | Purchase on 01/31 (Card #383831054), | | |
| | Costco Whse #0067 Rancho Cucamo CA | 225556 | 100.00 |
| 02/01 | Purchase on 01/31 (Card #383831054), | | |
| | Costco Gas #00678 Rancho Cucamo CA | 354601 | 48.18 |
| 02/01 | Bk of AM Crd ACH DES:Paybyphone ID:010171152 INDN:5329062344130995000000 Co ID:3001190310 PPD Ref:008032010170128 | | 49.99 |
| | | | 56.00 |

**Continued on next page**
0037402.002.T21.1

California

Page 2 of 8

**American Home Mortgage Servicing D.I.P.**

P.O. Box 631730
Irving, TX 75063-1730

Customer Care Department 1-877-304-3100

7:00AM - 7:00PM CST Monday through Friday

Website:   www.americanhm.com

Glenda Murphy                006222        RE
Eric Murphy
9965 McKinley Street
RANCHO CUCAMONGA  CA 91730-4600

*New loan #*
*0003140836?*

Property Address:  9965 McKinley Street
                   Rancho Cucamonga  CA 91730

## MONTHLY BILLING STATEMENT

| | |
|---|---|
| Statement Date | 02/08/08 |
| Account Number | 1001461348 |
| Due Date | 03/01/08 |

| Item Description | Amount |
|---|---|
| **Balances** | |
| Principal Balance | $396,147.36 |
| Escrow Balance | |
| Unpaid Late Charges | |
| Other Unpaid Charges | |
| **Payment Factors** | |
| Principal & Interest Payment | $1,005.74 |
| Escrow Payment | |
| Other | |
| Total Payment | $1,005.74 |
| **Year-to-Date** | |
| Interest Paid | $2,011.48 |
| Taxes Paid | |

## IMPORTANT MESSAGES

American Home Mortgage has now made it easier than ever to make your mortgage payment on our website!  Visit www.Americanhm.com to find out how to make on-line payments at your convenience, 24 hours a day.

## TRANSACTIONS SINCE LAST STATEMENT

| Date | Description | Principal | Interest | Escrow | Optional Products | Miscellaneous |
|---|---|---|---|---|---|---|
| 02/08/08 | Payment | $1,693.64- | $2,699.38 | | | |

*Paid in FEBruary 2008*

## SPECIAL MESSAGES

**Your loan is an Adjustable Rate Mortgage with payment options.
You may choose one of four payment options.**

**Option 1:  Minimum Payment:** This amount pays the interest and if applicable, principal that is currently due under your loan note.  The amount may not be sufficient to pay all of the accrued interest for the previous month or to pay the loan in full over the remaining scheduled term. Negative amortization may result, which means that any unpaid interest will be added to the principal loan balance and will accrue additional interest.

**Option 2:  Interest Only Payment:** This amount pays all the accrued interest for the previous month (including the amount that exceeds the Minimum Payment).  However, no portion of the payment will be applied to reduce the principal balance of your loan.

**Option 3:  Full Principal and Interest Payment** (based on the remaining term of your loan):  This amount pays all of the accrued interest for the previous month (including the amount that exceeds the Minimum Payment) and a sufficient amount of principal to pay off your loan based on the remaining scheduled term under your loan documents.

**Option 4:  Full Principal and Interest Payment** (based on a 15-year term):  This amount pays all the accrued interest for the previous month (including the amount that exceeds the Minimum Payment) and a sufficient amount of principal to pay off your loan based on a 15-year term.

The Minimum Payment is the **LEAST** amount that you must pay.  One or more of the options may not be available each month.  If other options are available, the payment amounts in those options will always be equal to or greater than the Minimum Payment.  The payment amount shown for each available option, as applicable, also includes an escrow payment, and fees for any optional products.

Please detach the mortgage payment coupon at perforation below and return with payment.

# Detailed History for Police Inc# #RC190640343 As of 5/28/2019 16:04:03

Output for: G3408

Priority:3 Type:530.5 - IDENT THEFT RPT
Location:5812 SAN SEVAINE RD, RCC btwn CLARK CT and ROSS CT

| Created: | 03/05/2019 17:15:12 | EC29 | I1531 |
| Entered: | 03/05/2019 17:18:39 | EC29 | I1531 |
| Dispatch: | 03/05/2019 17:58:31 | EC07 | A5192 |
| Enroute: | 03/05/2019 17:58:31 | EC07 | A5192 |
| Onscene: | 03/05/2019 18:16:48 | MRCP10 | G6197 |
| Control: | 03/05/2019 18:30:20 | EC07 | A5192 |
| Closed: | 03/05/2019 18:53:02 | MRCP10 | G6197 |

IC: PrimeUnit:11P23 Dispo:NAT Type:530.5 - IDENT THEFT RPT
Jur:RC Group:RC Squad Area:RC3 RptDist:RC069 ☐ Detail

| 17:15:12pst | CREATE | Location:5812 SAN SEVAINE RD, RCC Type:530.5 Inf/Name:MURPHY, GLINDA Phone:909/463-7064 Group:RC RD:RC069 TypeDesc:IDENT THEFT RPT LocDesc:btwn CLARK CT and ROSS CT Priority:3 Response:1PAT Jur:RC LocType:S RPCont:Y |
| 17:18:39 | ENTRY | Urgency:None-->R Text:RP WOULD LIKE TO SPEAK TO A DEP REF A 530.5. WILL BE REGARDING A REFI AND MORTGAGE PAYMENTS. |
| 17:18:40 | -SELECT | |
| 17:18:39 | -NPREMS | Text:(none) |
| 17:18:41 | NOMORE | |
| 17:19:07 | HOLD | |
| 17:58:31 | DISPER | 11P23 Operator:G6197 OperNames:HEENEY,JON |
| 17:58:31 | -PRIU | 11P23 |
| 17:58:35 | *ENRTE | 11P23 |
| 18:16:48 | *ONSCN | 11P23 |
| 18:29:32 | *ASSIST | 11P33 CalSgn:11P23 Location:5812 SAN SEVAINE RD, RCC Operator:F5704 OperNames:RESENDEZ,CRYSTILYN |
| 18:30:11 | *ASSIST | 11P22 CalSgn:11P23 Location:5812 SAN SEVAINE RD, RCC Operator:G6191 OperNames:DEROSE,JAMES |
| 18:30:20 | OK | 11P23 |
| 18:30:34 | PRMPT | 11P33 Text:Preempted and dispatched to call #RC190640360 |
| 18:30:40 | PRMPT | 11P22 |
| 18:53:02 | *CLEAR | 11P23 Dispo:NAT Text:RP IS IN ONGOING INCIDENT WITH FINANCE COMPANY OF HER THREE HOMES. ALL HER HOUSES ARE PAID OFF AND FINANCE COMPANIES ARE STATING SHE STILL OWES MONEY ON THEM. ADVISED SUBJECT IT WAS A CIVIL MATTER AND SHE UNDERSTOOD IT WAS. JUST REQUESTED DOCUMENTATION. SHE HAS A COURT DATE ON 3/15. SHE STATED SHE WAS HAVING A HARD TIME WITH HER LAWYERS TO TAKE AND UNDERSTAND HER CASE SO SHE IS GOING TO REPRESENT HERSELF. SHE REQUESTED A RC NUMBER FOR HER DOCUMENTATION. |
| 18:53:02 | -PRIU | 11P23 |
| 18:53:02 | -CLEAR | |
| 18:53:02 | *CLOSE | |

## CONTACT INFO:

| Inf/Name | Phone | InfAdd | RPCont | Language | HBD/HS | RPArmed |
|---|---|---|---|---|---|---|
| MURPHY, GLINDA | 909/463-7064 | | Y | | | |

AHHMSI /payments 2009 leave to
Loan 00314 08362 / AGN 2093 1259 amend

12.24-09 CK # 3148 pd 1000 — ✓✓

12.18-09 pd 1062. BofA CK#3145 ✓✓

11-09-09 pd 1062 ccck # 634400 2388 ✓✓

10-06-09 pd 1081.77 See AHMSI Ledger ✓✓
*October\$ Rdst of modification

9-8-9 pd 1197.95 wf acct 3349 ✓✓

9-9-9 pd 1051 — wf acct 3344 ✓✓

9-7-9 WAmu Becomes Chase Bank ✓
Washington Mutal Becomes Chase

8-10-09 pd 1081.17 to AHMSI see attacht Ledger ✓

7-16-09 pd 1081.17 pd thru AHMSI pay Ledger ✓

6-22-09 pd AHMSI pd 1098.12 ✓✓

05-26-09 pd AHMSI 1200 — see attacht Ledger ✓✓

4-20-09 pd 1098.12 BofA acct ✓✓
3-11-09 modification Rdst

3-10-09 pd 1181.17 pd thru wf acct 3344 ✓✓
BANK Ruptcy chapter 7/3 /2009 ✓

1/09 3-4-09 pd 1064 — BofA acct — # 0023 ✓✓
wf R 7 Cas #

2-24-09 pd 1295 — BofA act
2-3-09 Dec pd 1064.00 ✓

1-5-09 pd AHMSI # 1085.12 wf ✓✓

148

270
271